## HARRIET FORT *vs.* JOSEPH BROWN.

In an action for an assault and battery, the plaintiff called as a witness the physician and surgeon who attended her, who was asked this question: "What was the difficulty, judging from her statement, and what you saw?" The question was objected to, on the ground that the witness could not state what was said to him. The court overruled the objection. *Held* not erroneous.

The witness then testified, in answer to the question, as follows: "She called my attention to a pain in her arm, which, at the time, from its appearance and her statement, was severe, and she believed to be violent neuralgic pains. I can not give any information as to how it was produced. I can only say how it might have been produced," &c. The defendant's counsel objected to the evidence as to how it might have been produced. The court said the question to be put was, what the witness discovered to be the matter with the plaintiff's arm, and to what he imputed it, as a matter of medical opinion, and allowed the question to be put in that form, with the qualification "taking into consideration what she said to you, and what you saw." *Held* not erroneous.

The following question was then put to the witness: "How could the wound with an axe produce that injury?" Which he answered. Question; "Might that end in paralysis of the arm, to a certain extent?" The court allowed the question to be put, whether, taking her statement to be true, it would produce that result. *Held* that the objection to this evidence was not well taken.

The witness was then asked this question: "Assuming that the plaintiff did receive a blow on the point of her elbow, and by the same blow the skin was discolored for some days, some three inches above, the blow being severe at the time, so as to produce a temporary suspension of the power to stand—suppose that to be so, and that from that time to this she has been unable to raise and control her arm, so as to do any thing with it, what do you say produced that; might it have been produced by the blow?" The court overruled an objection to this question, and allowed it to be put, with the qualification "if the jury believe the statement of facts." *Held* that an exception to this ruling was not well taken.

And it was *held* that the questions put to the witness related to the extent of the injury the plaintiff had sustained, and the nature of that injury, and that his answers went no further. And that the answers, with the questions by which they were elicited, were all of a scientific and professional character.

Where the owner of a farm leased the same, with the dwelling house thereon, to another, reserving one chamber or bedroom in the house; *Held* that his right to occupy the room reserved gave him no other right to the yard within the curtilage of the dwelling house than that of a passage or way to and from the chamber so reserved; and did not justify him in passing with his horse and wagon through the yard and removing a clothes line placed there by the tenant.

Fort *v.* Brown.

APPEAL from a judgment entered upon a verdict at the circuit, in favor of the plaintiff, for $1200 damages.

*W. F. Cogswell,* for the appellant.

*Geo. F. Danforth,* for the respondent.

*By the Court,* WELLES, J. The action was brought for an alleged assault and battery committed by the defendant upon the plaintiff. Upon the trial, at the Monroe circuit, in October, 1864, the plaintiff gave evidence, by her own testimony and that of other witnesses, tending to show an aggravated assault and battery committed upon her person by the defendant, by which she received a very serious, and probably a permanent injury to her arm. The defendant gave evidence by his own testimony and that of other witnesses, tending to show that he was not guilty of the acts charged upon him by the plaintiff's evidence, and that the injury was not as severe as alleged by her. Among the witnesses called by the plaintiff was E. W. Moore, a physician and surgeon, who testified that the plaintiff called upon him eight or ten times, as he thought, in reference to her arm. The plaintiff's counsel then asked the witness the following question : " What was the difficulty, judging from her statement and what you saw ?" The question was objected to by the defendant's counsel, on the ground that the witness could not state what was said to him. The court overruled the objection, and the counsel for the defendant excepted. The witness then testified in answer to the question as follows : " She called my attention to a pain in her arm which, at the time, from its appearance and her statement, was severe, and she believed to be violent neuralgic pains. I cannot give any information as to how it was produced ; I can only say how it might have been produced ; not how it was produced." The defendant's counsel objected to the evidence as to how it might have been produced. The court said the question

to be put was what the witness discovered to be the matter with the lady's arm, and to what he imputed it, as a matter of medical opinion. The plaintiff's counsel adding, "taking into consideration what she said to you and what you saw;" and the court allowed the question in that form, to which the defendant's counsel excepted.

The witness then testified, in answer to the question as thus modified and allowed, as follows; "Her statement to me governed my opinion. I couldn't state that they were absolutely true from any evidence of her arm having received an injury, because there was none to be seen; but it was internal and deep, and taking her statement that there was an injury, I could readily believe that the neuralgia might have been caused by it; I could readily believe that."

The following question was then put to the witness: "How could the wound with an axe produce that injury?" to which he answered: "We know the fact that such injuries result in neuralgic pains, and it might be, in such a case." Question; "Might that end in paralysis of the arm to a certain extent?" The defendant's counsel objected that it could not be asked whether a hypothetical injury might not cause something else. The court allowed the question to be put, whether, taking her statement to be true, it would produce that result. The defendant's counsel excepted to such ruling, and the witness answered: "A blow upon a nerve might produce paralysis."

The plaintiff's counsel then put the following question to the witness: "Assuming that she did receive a blow on the point of her elbow, and by the same blow the skin was discolored for some days, some three inches above, the blow being severe at the time, so as to produce a temporary suspension of the power to stand—suppose that be so, and that from that time to this she has been unable to raise and control her arm so as to do any thing with it, what do you say produced that; might it have been produced by the blow?" The defendant's counsel objected to the question, as

Fort *v.* Brown.

the case states, on the ground before stated; "and further, that this is not a matter on which to call for a professional opinion; the question is wholly one for the jury." The court overruled the objection, and allowed the question to be put, with the qualification, in the language of the case, "if the jury believe the state of facts." The defendant's counsel excepted to this ruling, and the witness answered, "I think it might."

None of the foregoing objections or exceptions were, in my judgment, well taken. It is to be borne in mind that all the questions put to Doctor Moore were on the subject of the extent of the injury the plaintiff had sustained, and of the nature of that injury, and his answers went no further. They were all, with the questions by which they were elicited, of a scientific and professional character. The witness did not know, or profess to know, in what manner or by what means the injury happened to the plaintiff, and therefore had to rely principally upon her statements on that subject. It was for the jury to say whether those statements were true, and if they should believe them, the testimony of the physician as to the effect would be applicable. If they did not believe them, they would dismiss his evidence from their consideration. It was not to prove the facts in relation to the assault and battery that Doctor Moore was examined, and none of the questions put to him, nor his answers thereto, appear to have had any such object or tendency.

In *Aveson* v. *Kinnaird*, (6 *East*, 198,) Lawrence, J. says: "As to the general ground of objection to the evidence as hearsay, it is in every day's experience in actions of assault that what a man has said of himself to his surgeon is evidence to show what he suffered by reason of the assault." (*See also* 1 *Greenl. Ev.* § 102 *and authorities cited in note* 4; *Caldwell* v. *Murphy*, 11 *N. Y. Rep.* 416; *Brown* v. *N. Y. Central R. R. Co.*, 32 *id.* 603.)

There were a number of exceptions to the charge of the court to the jury. They all related to the question whether

the plaintiff's husband had the exclusive right of occupancy and use of the *locus in quo* or yard where the assault and battery was alleged to have been committed, at the time in question. The court charged in the affirmative of that question. In this it seems to me he was entirely correct. The yard was within the curtilage of the dwelling house, and the lease of the farm secured to the plaintiff's husband the use of the whole house, except one chamber or bedroom, after the new house which the defendant was building on another part of the farm should be completed. It was proved, beyond question, that at the time of the alleged assault and battery, the new house was completed, and the defendant was occupying it, and the plaintiff's husband living in and occupying the other house, except the chamber and bedroom reserved. The defendant's right to occupy the chamber and bedroom gave him no other right to the yard than that of a passage or way to and from them. The defendant's counsel requested the court to charge the jury that for the purpose of passing and repassing, the defendant had a right to remove any obstructions placed upon the usual way of passing and repassing, by such means as were necessary therefor, which request the court declined, and the defendant excepted.

The right which this request assumed for the defendant was beyond what was necessary for his right of way to the chamber and bedroom. The right which was denied him was that of passing with his horse and wagon by removing the clothes line which the plaintiff had placed for the purpose of drying her clothes. We think there was no error in the refusal to charge as requested. The foregoing embraces all the points made upon the argument. And we think, for the reasons stated, the judgment should be affirmed.

Judgment affirmed.

[Monroe General Term, September 3, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]