K. of P: *v.* Steele.

K. of P. *v.* Steele.

*(Jackson.* May 19, 1902.)

**1. Jury Trial.** *Challenge of jurors.*

Unless an objectionable juror has been forced upon him after his peremptory challenges are exhausted, a party cannot complain of the Court's error in compelling him to peremptorily challenge an incompetent juror. *(Post, pp. 627, 628.)*

Case cited: Wooten *v.* State, 99 Tenn., 189.

**2. Evidence.** *Expert opinions upon hypothetical case.*

It is competent for physicians, as experts, to express an opinion as to the cause of death, either from their personal knowledge of the facts of the case or upon a hypothetical statement of the symptoms of the disease as detailed by other witnesses; but it is improper to embrace in the hypothetical case submitted for the opinion of experts such facts as the jury are as competent as the experts to judge of. *(Post, pp. 629, 630.)*

Case cited: Gibson *v.* Gibson, 9 Yer., 331.

**3. Same.** *Erroneous methods in introduction of, not cause for reversal, when.*

While it is improper to embody in a hypothetical case for the opinion of experts facts proper only for the jury's determination, along with other facts proper for expert opinion, still a party who has first resorted to the improper method of examination cannot complain that his adversary has adopted the same method in rebuttal, and cannot insist upon the withdrawal of the improper evidence thus introduced by himself and his adversary after he has made the experiment. *(Post, pp. 630, 631.)*

**4. Charge of Court.** *Need not explain preponderance of evidence.*

The Court having correctly charged that plaintiff must sustain his case by a mere preponderance of the evidence, is not in error for failure to explain what is meant by the phrase " preponderance of evidence." Such terms as " preponderance of

K. of P. *v.* Steele.

evidence" and "reasonable doubt" are so plain and well understood that any attempt to explain them is apt to confuse. These are expressions that the most ordinary, as well as the most critical, mind can equally understand. (*Post, p. 631.*)

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby County. L. H. ESTES, J.

F. P. POSTON for K. of P.

GREER & GREER for Steele.

WILKES, J. This is an action upon an insurance policy on the life of J. K. Steele, the husband of the plaintiff. There was a trial before a jury in the Court below and a verdict and judgment for $3,000.00, the amount of the policy, and the defendant order has appealed to this Court, and assigned errors.

The cause has been before this Court twice at former times and reversed for errors not going to the merits.

There was a by-law of the order that if the assured's death was caused or superinduced by the use of liquor, narcotics, or opiates, or was the result of suicide, whether the insured was sane or insane, then the amount to be paid should

24 P—40

be only a proportionate amount of the entire sum provided in the policy. It was defended by plea that the insured's death was the result of suicide, or was caused by the use of liquors, narcotics, or opiates, within the terms of the by-law, and that, as a consequence, the company was only liable for $780.12, as the proportionate amount collectible on the policy in that event, and this much the company was willing and offered to pay.

The insured was found dead in his room at his boarding-house, about 9 o'clock on the morning of April 3, 1897. He was partly undressed and the bed was turned down. Near the bed was a table or dresser, and near this was a chair in which insured had been sitting; there was a box or vial on the dresser by the side of the chair labeled morphine. When found, insured had pitched forward partly out of his chair, the side of his face and part of his body lying on the floor; his face was much discolored with a bluish black appearance, and a slip was lying under his body, on which was written in pencil, "Annie, my dear wife, life is too burdensome for me to bear." He had a lead pencil grasped between his fingers.

He was without money and was in arrears for board, and had asked indulgence of his landlady. There was no fire or gas in his room. There was the empty vial on the dresser labeled mor-

phine, and there was the slip of paper as before stated. There was evidence tending to show that he had attempted suicide by taking morphine three times previously at another hotel, when the proprietor told him if it was his purpose to commit suicide, he would prefer that he would go somewhere else to do it. Steele then left the hotel.

It is not assigned that there was no evidence to support the verdict.

The first error assigned is that the Court committed error in empanelling the jury.

Twelve men were placed in the box, and after examination were passed by the plaintiff, and then examined by defendant. A person by the name of Dean was examined, and in answer to questions put, said in substance that he would not find for the defendant company upon circumstantial evidence, but would do so upon a preponderance of the evidence. His answers not being satisfactory to the defendant, he challenged the juror for cause, but the Court refused to sustain the challenge, and defendant thereupon challenged the juror peremptorily, and his place was filled by another, who was satisfactory.

The defendant afterward challenged Juror Walker peremptorily, but accepted others as satisfactory. The defendant at length challenged Juror Bond peremptorily, when he was told by the Court that his challenges were exhausted, where-

upon counsel for defendant stated that he had no objection to the Juror Bond, but made the challenge peremptorily simply to preserve the point, and this was more elaborately explained by the Court, with the assurance that counsel for defendant had no objection to the juror, but wanted merely to preserve his rights to his peremptory challenges.

It is said that this was error. We are of the opinion that it was not. The defendant was not prejudiced by the action in regard to Juror Dean, since he was not on the jury. He was not prejudiced by the refusal of the trial Judge to permit him to challenge Juror Bond because this juror was satisfactory to him, and he was not in the make-up of the jury compelled to accept any objectionable person.

Thompson, in his work on Juries, page 399, says: "Something more must be shown; that after the peremptory challenges were exhausted, some objectionable person took his place on the jury who would otherwise have been excluded by a peremptory challenge." In accord with this is the case of *Wooten* v. *The State,* 15 Pickle, 189, and cases there cited. See, also, *N. W. Pac. R. R.* v. *Hubert,* 116 U. S., 624; *Haynes* v. *Missouri,* 120 U. S., 71; *Hoft* v. *People of Utah,* 129 U. S., 430; *Ex Parte* Sife, 123 U. S., 131.

It is said that the Court allowed medical men to testify as experts as to the cause of insured's death upon a hypothetical case. It appears that defendant himself brought out evidence of this character, and was followed along the same line by the plaintiff with other witnesses, and there was a conflict of testimony. Defendant moved to reject all testimony given by the doctors upon hypothetical cases put, and asked to have such testimony excluded, and that the jury would not consider the same, which was by the Court over-ruled.

The contention is that it was not a case for expert testimony; that the surrounding circumstances were apparent to any one, and that the jury could judge from them whether it was a case of suicide from taking morphine or not.

We are of opinion that this objection is not well taken. It is true that any person could form an opinion on this subject, basing it on what was found in the room and the position of the dead man, and it was error to embrace such fact in the hypothetical statement, but the doctors went beyond this and expressed opinions based on the condition and appearance of the body and the well-known effects and results of narcotic poison. In other words, they judged not from the surroundings altogether, but also from the appearance of the body, and their knowledge of the result of such poison, which would only

be in the possession and grasp of an expert professional man.

In Rogers on Expert Testimony, Sec. 49, it is said: "The opinion of physicians are also received as to the cause of death of any particular person, such opinions being founded either on personal knowledge of the facts of the case, or upon a statement of the symptoms of the disease as detailed by others. If such opinions were not received, it would be impossible, in many cases, to know the cause or manner of death, especially in those cases where there were no persons present at the time of the death." In support of this view, see: *Gibson* v. *Gibson,* 9 Yerg., 331; 2 (17); *People* v. *Detroit Post & Tribune Co.,* 54 Mich., 457; *Fort* v. *Brown,* 46 Barb., 366; *in re* Jaccott's will, 53 Hun., 634; *Threlheld* v. *Bascomb,* 35 Vt., 398; *Mayor* v. *Right,* 63 Mich., 32.

While it was error to embrace in the hypothetical case the facts regarding the condition of the room and articles found in it, and such other facts as did not call for expert opinion, still this was first done by the defendant, and he cannot be heard to complain that the plaintiff pursued the same course of examination in rebuttal, nor can he be allowed to withdraw his own as well as his adversaries' examination along that line.

K. of P. *v.* Steele.

It is said it was error to submit to the jury the question of the sanity or insanity of J. K. Steele, in as much as that question was not involved. We think that under the pleadings and the provisions of the by-law, this was not error, but if it was, it is not reversible, because not material.

It is said that the Court, while he correctly charged that a mere preponderance of evidence was all that was required upon the issue presented, did not anywhere explain to the jury what was meant by preponderance of evidence.

The term preponderance of evidence and reasonable doubt are so plain that an attempt to explain either is apt to lead to confusion. These are expressions that the most common as well as the most critical mind can equally understand, and no explanation can make them plainer.

We are of opinion, without setting out the specific statement made by the trial Judge, that he sufficiently laid down the rules by which the jury were to be governed in weighing the testimony and giving credit to the statements of witnesses, and the instruction that a preponderance of the evidence was sufficient to base their verdict on was sufficiently plain and full.

Upon the whole case we see no error, and the judgment of the Court below is affirmed, with costs.