ALBERT H. COLE *et al.* *v.* POND FORK OIL & GAS COMPANY

(CC 697)

Submitted April 10, 1945. Decided June 26, 1945.

*Campbell & McNeer*, for plaintiff.
*Harold A. Ritz* and *Lively & Lively*, for defendant.
*Harry G. Shaffer, Robert S. Spilman* and *M. O. Litz*, amici curiae.

Fox, JUDGE:

This case comes to this Court on certification by the Circuit Court of Kanawha County on its own motion, and involves the constitutionality of Chapter 127, Acts of the Legislature, 1939, now incorporated in Michie's Code 1943 as Section 2j of Article 13 of Chapter 11. The circuit court sustained a demurrer to a notice of motion filed by the plaintiffs, and therefore the plaintiff below has the affirmative in this Court, and the parties hereto occupy the same relative positions in which they stood in the court below, and will be referred to as such.

On March 18, 1924, Albert H. Cole and others, acting in the capacity of Trustees of the Cole & Crane Real Estate Trust, executed a lease to C. A. Croft, whereby they leased for oil and gas purposes a certain parcel of land situate in Boone County, by which it was agreed in general that the lessors should receive one-eighth of the oil and gas produced and saved from the leased premises, and an equal one-eighth part of the proceeds from the marketing or sale of natural gas from said premises, but in no case to be less than one cent for each one thousand feet of gas produced, and the equal one-eighth part of all gasoline manufactured from said premises either from oil or natural gas, and the equal one-eighth part of all lamp black manufactured from said premises. This lease agreement is set out in full in plaintiff's notice of motion. Some transfers of the lease and the property covered thereby have been made on the part of both plaintiff and defendant. No question is raised as to the right of the plaintiffs to maintain this action, nor that the defendant is the owner of the lease in question, under transfer direct or indirect from Croft, and that it has assumed the obligations created thereby. The leased property has been developed and a number of producing gas wells drilled thereon, from which substantial royalties have accrued to the lessors. The royalties so accruing for the months of June, July and August, 1943, aggregate $1,289.89, and when defendant undertook to make settlement for these royalties it deducted therefrom the sum of $1,246.03, consisting of $958.49 paid under Section 2a of Article 13, and $287.54 under Section 3a of Article 13 of Chapter 11 of the Code, as amended, on account of taxes claimed to have been paid by the lessee to the State under said two Sections 2a and 3a for a period of approximately four years, beginning with the effective date of Chapter 127, Acts of the Legislature, 1939, and paid the balance of $43.26 to the plaintiffs. These deductions were made by the defendant under the supposed authority of Chapter 127 aforesaid.

In this situation plaintiffs instituted their suit to re-

cover $1,246.03. In their notice of motion they admit the payment by the defendant to the State of that amount; but they deny the right of the defendant to deduct the same, or that they have become obligated to pay the same. It is stated that the deduction was made under the supposed authority of Chapter 127 aforesaid. The situation presented was one in which the court could say that, on the face of the notice of motion, if the Act of 1939 was valid, plaintiffs had not made out a case; and, therefore, taking the view that the Act aforesaid was constitutional and valid, sustained a demurrer to the plaintiffs' notice of motion.

Immediately before the enactment of Chapter 127 of the Acts of the Legislature, 1939, the statute covering taxation of the privilege of engaging in the business of producing oil and gas, and of collecting rents for the use of real and personal property was contained in four sections of Article 13 of Chapter 11 of Michie's Code. 1943. For a full understanding thereof we quote said sections in full:

"Section 2. *Imposition of Privilege Tax.*— There is hereby levied and shall be collected annual privilege taxes against the persons, on account of the business and other activities, and in the amounts to be determined by the application of rates against values or gross income as set forth in sections two-(a) to two-(i) inclusive of this article. * * *

"Section 2a. *Production of Coal and Other Natural Resource Products.*—Upon every person engaging or continuing within this state in the business of producing for sale, profit, or commercial use any natural resource products, the amount of such tax to be equal to the value of the articles produced as shown by the gross proceeds derived from the sale thereof by the producer, except as hereinafter provided, multiplied by the respective rates as follows: * * * natural gas, in excess of the value of five thousand dollars, six per cent; * * *. The measure of this tax is the value of the entire production in this state, regardless of the place of sale or the

fact that delivery may be made to points outside the state.

"Section 2i. *Business of Collecting Rentals, Royalties, etc.*—Upon every person engaging or continuing within this state in the business of collecting incomes from the use of real or personal property or of any interest therein, whether by lease, conveyance or otherwise, and whether the return be in the form of rentals, royalties, fees, interest or otherwise, the tax shall be one per cent of the gross income of any such activity * * *.

"Section 3a. *Surtaxes; Businesses Exempt*—Every person taxable under sections two-a, two-b, two-c, two-d and two-g of this article shall pay, in addition to that tax, and all other taxes, an additional surtax of three-tenths of each tax imposed by such sections. * * *."

Sections 2, 2a and 2i were enacted by Chapter 86, Acts of the Legislature, 1935, and Section 3a by Chapter 120, Acts of the Legislature, 1939. On March 11, 1939, the Legislature, then in regular session, enacted what now appears in Michie's Code, 1943, as Section 2j of Article 13 of Chapter 11, being Chapter 127 of the Acts of that session. We quote the title to the act and the body thereof in full:

"AN ACT to amend article thirteen, chapter eleven of the code of West Virginia, one thousand nine hundred thirty-one, by adding thereto section two-j, relating to tax on oil and gas."

"Section 2j. *Production of Oil and Gas; Measure of Tax; Deductions; Exceptions.* Every person engaging or continuing within this state in the business of severing oil, natural gas or petroleum products from the strata of the earth, or of operating oil or gas properties, shall use as the measure of the tax imposed by section two-a of this article the value of the entire production, with no deduction by reason of payments under contracts or agreements requiring payment, either in money or in kind, to the owners of the royalty interest, excess royalty or working in-

terest in such properties, where such payments are made in kind, the market value of the natural resource product or other thing so paid, at the time of payment, shall be included in the measure of said tax. Every person who is hereby required to pay said tax measured by the entire production of the property operated, is hereby authorized and empowered to deduct from any payment, in money or in kind, to the owners of any royalty interest, excess royalty or working interest in such properties, that proportion of the tax paid which the said royalty, excess royalty or working interest bears to the entire production; and there is hereby levied upon such royalty interest, excess royalty or working interest, such proportionate part of the tax imposed by said section two-a. The exemption of five thousand dollars granted to producers of natural gas, by said section two-a, shall be for the benefit of the owners of such royalty interest, excess royalty or working interest in the same proportion which the said royalty interest, excess royalty or working interest bears to the entire production, and the balance of said exemption shall be for the benefit of the person operating such properties.

"No person shall be required to pay the tax imposed by section two-i of this article, upon income which is included in the measure of the tax imposed upon the production of oil, natural gas or other petroleum products by section two-a of this article."

Thus the statutes stand unamended to this day.

The questions certified to this Court by the circuit court, and the assignments of error relied upon by the plaintiffs, are substantially the same, so far as they raise questions of law. For the sake of brevity we quote the assignments of error as follows:

"1. Plaintiffs say that the Circuit Court erred in holding that said Section 2-j is valid. Said section is unconstitutional for the following reasons:

"(a)   It impairs the obligation of the contract between plaintiffs and defendant.

"(b)   It undertakes an illegal delegation of power by the legislature.

"(c)   It violates Section 30 Article VI of the Constitution of West Virginia, which provides that no act of the legislature shall embrace more than one object and that such object shall be expressed in the title.

"(d)   It results in inequality of taxation of persons, such as plaintiffs, who receive royalty from gas leases, and therefore violates the constitutional requirement that taxation shall be equal and uniform.

"2.   Even if said Section 2-j is valid, it does not authorize defendant to withhold from royalties owing plaintiffs any sum because of taxes paid by defendant under Section 3-a.   The Circuit Court's holding to the contrary is erroneous."

Prior to the enactment of Section 2-j, quoted above, the question of the right of a lessee to deduct from royalties accruing to a lessor a proportionate amount of taxes imposed by Section 2-a, and 3-a of Article 13, was before this Court in the case of *Kanawha Valley Bank* v. *United Fuel Gas Co.*, 121 W. Va. 96, 1 S. E. 2d 875. In that case the appellant, the gas company, contended that its reimbursement for one-eighth of its so-called production tax was justified under one of three propositions: (1) That the lessor was a joint adventurer with the lessee; (2) is the principal of the lessee; or (3) is part owner of the gas produced with the lessee. We held that "Under a producing gas lease which provides that the royalty shall be one-eighth of the wholesale market price of the gas at the well, the lessee is not entitled to deduct from the royalty one-eighth of the tax imposed on producers of gas by Code. 11-13-2a." This case was decided on February 28, 1939. The force and effect of that opinion is not sought to be evaded, but the defendant says that the ruling therein made was nullified by the passage of Chapter 127 of the Acts of the Legisla-

ture, 1939, passed on March 11, 1939, and made effective ninety days from passage. We are not convinced that the Act of the Legislature aforesaid operated to nullify the decision in the *Kanawha Valley Bank* case. There has been no change in our statute with respect to the point decided therein. The Legislature has placed the producer of oil and gas and the owner thereof in two different classifications. It has imposed upon the producer a relatively heavy tax and a surtax; and it has classified the owner of the oil and gas who leased the same as being engaged in the business of collecting incomes from the use of real estate or personal property, and did so by Section 2-i of Article 13.

In the *Kanawha Valley Bank* case there was cited in support thereof the case of *Norum* v. *Ohio Oil Co.*, 83 Mont. 353, 272 P. 534. Since the decision in the *Kanawha Valley Bank* case, the question was considered in two cases by the Supreme Court of Illinois, under a statute not materially different from our own. In *Friedrich* v. *Wright*, 386 Ill. 229, 53 N. E. 2d 974, it was held that "The owner of an oil royalty, who has no control over production of oil and who receives only a part of the oil as royalty, is not engaged in an 'occupation' and is not subject to an occupation tax"; and the general subject is rather fully discussed in *Ohio Oil Co.* v. *Wright*, 386 Ill. 206, 53 N. E. 2d 966. In that case it is expressly stated that the Legislature does not have the power to declare that not to be a fact which everybody knows is a fact; and that by the same reasoning cannot legislate that to be a fact which everybody knows is not a fact. A lessor of oil and gas parts with all right and control over the production of his property, save and except the right to insist upon protection of the leased property by reasonable development under the lease; but generally speaking, he parts with every vestige of control over the actual production of oil and gas in the property he leases. The Legislature having classified the lessor and the lessee, there having been no repeal of that classification, we are of the opinion that the ruling of the *Kanawha Valley Bank* case still stands. The partic-

ular point mentioned will be discussed later in connection with the attempt of the Legislature to lay a tax on the lessor's interest in accrued royalties. At this point it may be well to suggest that accrued royalties are personal property. *Ohio Oil Co.* v. *Wright, supra.* If personal property, it can only be taxed in accordance with the general provisions of law covering other classes of personal property.

In approaching the discussion of the questions of law raised in the case before us, it is well to dispose of certain fundamental points which may, and we think do, have a bearing upon these questions. In the first place it is well settled that courts, in passing on the constitutionality of an act of the Legislature, will, in effect resolve every reasonable doubt in favor of the constitutionality of the act. This principle was established early in the history of this State in *Bridges* v. *Shallcross,* 6 W. Va. 562, and has been consistently followed ever since, even to the point of saying that if there is a reasonable doubt as to the constitutionality of an act it should be upheld, although we apprehend that it is hardly meant that the term "reasonable doubt" will be given the same meaning as in criminal cases where life or liberty is at stake. Another point which is conceded is the broad power of the Legislature to impose taxes. It is said to be an attribute of sovereignty and to be inherent in all governments. However, since we operate under a written Constitution, which vests in the Legislature the power of taxation, its exercise of such power is to some extent limited thereby. But while the Legislature is entitled to the benefit of every reasonable doubt with respect to the constitutionality of the legislation it enacts, and the power of taxation vested in the Legislature by the Constitution is broad, this is not to say that that power is unlimited, because other provisions of the Constitution are just as binding and effective as are those pertaining to the taxing power of the Legislature, and the broad power thus claimed and admitted cannot be used to break down other equally important constitutional

provisions. Another principle which may be conceded is that persons who enter into contracts must be held to do so with full knowledge of the power of the government, through the imposition of taxes or otherwise, to impose burdens upon the subject matter of the contract, in this case an oil and gas lease. The fact that the original lessors and lessee entered into the lease agreement did not entitle them to say that the Legislature may not tax the subject matter of their contract, either as against the lessors or lessee or both, and they cannot complain of any burden imposed upon either by reason of their lease agreement. But we have not found where this power in the government to tax or otherwise impose burdens on property, which is the subject of a contract between individuals, has been extended to permit a Legislature to enact statutes, even in the guise of taxation, such as will impair the obligation of a contract as between the persons, firms or corporations who entered into it. That contract, as we have always understood the law to be, as between the parties thereto, cannot be impaired by legislative action, and all we have to do to support that proposition is to quote Section 10 of Article I of the Constitution of the United States, which says: "No state shall * * * pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts or grant any Title of Nobility"; and the provision of the Constitution of this State, Section 4 of Article III, the pertinent part of which provides: "No bill of attainder, *ex post facto* law, or law impairing the obligation of a contract, shall be passed." We do not think it necessary further to discuss this question. If the only effect of the enactment of Chapter 127 (Section 2j) was to authorize defendant to pay to plaintiffs a less sum than that provided by the lease agreement of March 18, 1924, then the obligation of the contract was impaired to that extent, to the prejudice of the lessors, and that under our constitutional provisions cannot be done. Whether the provisions of the Act attempting to impose a tax was the principal purpose sought to be effected raises another question.

Taking the first part of Section 2j, down to and including the provision authorizing a person who pays taxes under the provisions of Section 2a, Article 13, to deduct from any payment in money or kind due the owner of any royalty interest that proportion of the tax paid which the said royalty bears to the entire production, it is plainly a legislative grant to a lessee of permissive power to comply with the terms of his original agreement by payment of a sum of money less than that agreed to be paid by him; and up to that point Section 2j does nothing more. We hold that the Legislature had no constitutional right to make such an enactment for two reasons: First: There is nothing whatever in the title of the bill to give any notice or intimation that the purpose thereof was to make an apportionment of the tax accruing under Section 2a; and the section itself is in plain violation of the constitutional provisions quoted above which deny to any legislature the power to pass a bill impairing the obligation of contracts.

But there follows a provision which apparently attempts to impose a tax on accrued royalty, and thereby to bring it within the provisions of the title to the act, and to serve as some excuse for the enactment. This provision is: "There is hereby levied upon such royalty interest, excess royalty or working interest, such proportionate part of the tax imposed by section two-a"; and then follows a provision with respect to prohibiting the exemption allowed under the statute and a provision that "No person shall be required to pay the tax imposed by section two-i of this article, upon income which is included in the measure of the tax imposed upon the production of oil, natural gas or other petroleum products by section two-a of this article.", thereby surrendering all taxes theretofore collectible from the lessor on account of his leasing his land for oil and gas purposes, in order to permit distribution of the burden of the tax under the provisions of Section 2a, as between lessors and lessees. The question is whether any legal tax was laid by the act, and whether the statute does not stand

naked as an attempt to benefit one party to a contract to the prejudice of the other.

What the Act attempts is to levy a tax upon accrued royalty. In the very workings of the lease agreement nothing goes to the lessor until after oil or gas is produced, and when produced the royalty becomes personal property. *Ohio Oil Co. v. Wright, supra.* We raise the question: How in the guise of an amendment to Article 13 of Chapter 11 of the Code can a tax be imposed upon accrued royalty? We must bear in mind that, beginning in 1921, when the system of indirect taxation was first adopted in this State, the idea of a production tax on natural resources was discarded, and the Legislature based its right to impose indirect taxation upon Section 1 of Article X of our Constitution, as it then existed, provided that "The legislature shall have power to tax by uniform and equal laws all privileges and franchises of persons and corporations." This section of the Constitution has been amended and now reads: "The legislature shall have the authority to tax privileges, franchises, and incomes of all persons and corporations, and to classify and graduate the tax on all incomes according to the amount thereof, and to exempt from taxation, incomes below a minimum to be fixed from time to time, and such revenues as may be derived from such tax may be appropriated as the legislature may provide." Certain it is that in our system of indirect taxation we have taken the safe and sure way of taxing privileges as expressly authorized by the Constitution, instead of embarking upon a system which might give rise to many questions concerning equality, uniformity and questions of like nature. It is well settled that a statute may be amended by reference to article and section, so long as what is done by the amendment is in line with and conformity to the general purpose of the act being amended. It is only in cases where a statute is amended by reference to article and section, and where something is injected into the legislation entirely out of line with the general purposes of the law being amended, and no reference made thereto in the title of the act, that the

constitutionality provision with respect to title to acts of the legislature comes into question. In such a case the enactment is invalid. *Elliott v. Hudson,* 117 W. Va. 345, 348, 185 S. E. 465. The amendment must be germane to the purposes of the original act and not inconsistent therewith. *Laing* v. *Fox,* 115 W. Va. 272, 284, 175 S. E. 354. See also *Bedford Corp.* v. *Price,* 112 W. Va. 674, 166 S. E. 380; *Prager* v. *Chapman & Sons,* 122 W. Va. 428, 9 S. E. 2d 880. Here we have "AN ACT to amend article thirteen, chapter eleven of the code of West Virginia, one thousand nine hundred thirty-one, by adding thereto section two-j, relating to tax on oil and gas" as the title of the Act. The article being amended was confined solely to provisions relating to tax on account of a privilege to engage in certain businesses and occupations. It was never intended under this scheme to impose a tax upon any particular natural resource, or upon certain classes of business; but was intended to impose a tax upon the privilege of engaging in the business of producing the same and the gross income derived therefrom was used as the measure of the tax. The legislation under attack in this case attempts to impose a direct tax upon royalty. What the purpose of this provision was we fail to see, because to be benefited by the act the lessee must already have paid to the State the full amount of the tax, based upon gross proceeds of the sale of the natural product. The provision was therefore of no value to the State, unless it can be said that, if valid, it probably imposes a personal liability upon the lessor as well as the producer.

The contention that the enactment of the tax is covered by the title because it is referred to as an act relating to taxation of oil and gas can be met by the answer that the taxation of oil and gas is entirely outside the purpose of Article 13, the law being amended. In our opinion the effort to impose a tax upon royalty interest was futile, and no tax was imposed. We therefore fall back upon the original question as to the apportionment of the tax between the lessor and lessee, which

we have held to be an unconstitutional exercise of legislative power, operating to impair the obligation of a contract.

But it is contended by defendant that the question here raised was passed upon favorably to its contention by the Supreme Court of the United States in *Barwise v. Sheppard*, 299 U. S. 33, 57 S. Ct. 70, 81 L. Ed. 23. That case involved a statute of the State of Texas. The purpose of the Act as disclosed by the title was to raise revenue for the support of the state government by proposing and providing for the imposition of a tax upon the production of all oil within that state, and in one section of the act it is provided that "producer" shall mean any "person or persons, corporation, partnership, individual, trustee, receiver, trust estate or administrator owning, controlling, managing or leasing any oil well or any person who produces in any manner any oil by taking it from the earth or waters in this State"; and " 'Production' or 'total oil produced' shall mean the total gross amount of oil produced including all royalty or other interest;". At another point it is said: "The tax herein levied shall be borne ratably by all interested parties, including royalty interests; and producers and/or purchasers of oil are hereby authorized and required to withhold from any payments due interested parties, the proportionate tax due." With that legislation before it, the Supreme Court of the United States did uphold the act, notwithstanding the existence of a lease agreement, the obligation of which it was claimed had been impaired thereby. The Court in that case said: "It is true that the law in force when the lease was made and for some years thereafter laid a production tax on the lessee alone, and it is equally true that under the Act of 1933 a part of the tax is imposed on the lessors and the part imposed on the lessee is less than what would fall on him under the earlier law. But the State's power in the matter was in no way circumscribed by the earlier law. That law was subject to change at any time through a further exertion of the taxing power; and the lease presented no obstacle to such a change."

We have no quarrel with that statement of the law, but they were dealing with a production tax on oil, which extended to all interests therein, including royalty interests. We have no production tax. Our Legislature has studiously avoided imposing a production tax, and has resorted to the imposition of a privilege tax, whereby persons, firms and corporations are classified according to the business in which they are engaged, and a tax collected from the gross proceeds of their business, rather than upon any product which they may produce from the earth or manufacture or process. We are of opinion that a different question was presented in *Barwise* v. *Sheppard, supra,* than we now have before us, and we do not think the *Barwise* case can be relied upon as controlling our situation, in view of the special nature of our tax system. It may be, although that question is not before us and we do not decide it, that the legislature might at any time pass a law imposing a production tax upon oil and natural gas, or other natural resources such as coal; timber, limestone, etc., and if it has that power then, of course, it could, as was done in the Texas case, say that the tax should cover royalty interests as well as all other interests. But we have never done so. In imposing a burden of taxation on oil, gas and other natural resources, we have laid a tax upon the producer, and a tax upon the person who may engage in the business of leasing land to those who produce the natural resource. That is our system, right or wrong, and we do not think legislation can be constitutionally changed when attempted to be done by an act amending a statute by reference to article and section, where the amendment goes beyond the imposition of a tax upon the privilege of engaging in businesses and occupations. We are of opinion, therefore, that the attempted imposition of a tax on royalty, after the same must have necessarily accrued and become personal property, cannot be approved as being within the framework of our privilege tax statutes which are found in Article 13 of Chapter 11 of the Code, as amended to this date.

We hold, therefore, that the imposition of a tax upon royalty was invalid and of no effect; and that the remaining provisions of Section 2j, Chapter 127 of the Acts of the Legislature, 1939, are unconstitutional and void because they impair the obligation of the original contract of lease entered into on March 18, 1924. It follows that the ruling of the Circuit Court of Kanawha County should be reversed.

In view of the conclusions we have reached, it is unnecessary to consider the question of alleged illegal delegation of power by the Legislature; or the title of the Act beyond the discussion we have already had; or the question of inequality of taxation; and the further question of whether Section 2j extends to taxes paid by the defendant under Section 3a of Article 13. We base our finding upon our view that we do not think the tax on royalty attempted to be imposed was made legally effective; and without upholding of such tax, the remainder of the Act is in plain violation of the constitutional provisions against the impairment of the obligations of contracts.

The ruling of the Circuit Court of Kanawha County is reversed, and the case remanded to that court for further proceedings not inconsistent with the views expressed herein.

*Reversed.*