315 P.2d 217

Hannah Elizabeth BRIGGS, Plaintiff-Appellee,

v.

The ZIA COMPANY and United States Fidelity & Guaranty Company, Defendants-Appellants.

No. 6233.

Supreme Court of New Mexico.

Aug. 29, 1957.

Seth .& Montgomery, Oliver Seth and William R. Federici, Santa Fe, for appellants.

Joseph L. Smith, Henry A. Kiker, Jr., Albuquerque, for appellee.

McGHEE, Justice.

The defendants, employer and insurer, appeal from a judgment of the district court awarding claimant, employee's widow,

additional compensation under the Workmen's Compensation Act for failure of employer to furnish safety devices in general use in the industry engaged in as provided by ch. 29, section 1, L.1955.

Claimant's husband was fatally injured while working at a hot mix plant of Zia Company on July 29, 1955. At the time, Zia Company was engaged in city management and maintenance at Los Alamos. It also undertook the paving and maintenance of roads in that community, and supplied electric power to the city. The plant at which decedent was employed supplied hot paving mixtures for roads.

At time of accident a heavy motor was being moved from the plant for purposes of repair, and in moving it a large crane of the defendant company was used. While the decedent was standing on the ground and holding onto the motor being lifted by the crane, one of the crane cables came in contact with an energized electric line of high voltage, resulting in electrocution of the decedent.

The employer paid claimant full compensation at the regular rate of $30 per week and the sole issue before the trial court was whether the defendant employer was negligent in failing to provide a reasonable safety device in general use for the protection of claimant's husband so as to entitle claimant to an additional fifty percent award. Verdict and judgment of the court were for claimant, and appellants bring error on the following grounds: (1) Certain evidence was inadmissible without which there would not be substantial evidence to support the judgment, and (2) there was prejudicial error in instructions to the jury.

The appellants maintain on this appeal that testimony of witnesses as to "general use" of safety devices in an industry is inadmissible as being an ultimate fact and an invasion of the jury's province. An example of this testimony is as follows:

"Q. State whether or not * * * there are any additional safety devices other than those which you have mentioned that were in general use and furnished generally for the use or safety of workmen in connection with the lifting of objects near electric power lines. A. There is.

"Mr. Reid: Object on the ground it calls for a conclusion of the witness as to what is in general use. That invades the province of the jury.

"Court: Overruled.

"A. There is in use in general use what is known as a Line Hose. This is a hose that is purchased on the market and it is pliable on one side, one portion of it is split so you can separate it and put it down over the wire at very minimum expense * * *."

It is appellants' theory that the witnesses should have been restricted to giv-

ing specific examples of the use of safety devices, and that it should have been left to the jury to determine whether or not such use was "general" in the industry. Appellants are actually raising the old problem of exclusion of "opinion" evidence, and the authorities cited in their brief for the most part relate to that question. See, Wigmore on Evidence, § 1920 (3rd ed. 1940); McCormick, Evidence, 22 (1954). It is not necessary that we become involved in that argument as the rules of evidence relating to "general usage" or "custom and usage" have taken on some individual aspects of their own. A witness qualified to do so may testify directly as to a general use or custom, without being restricted to testifying as to a particular example thereof. As stated in Jarecki Mfg. Co. v. Merriam, 104 Kan. 646, 180 P. 224, 226:

"The factum probandum, existence of the custom relied on, does not consist merely of isolated instances or occurrences. It is rather the comprehensive result of a series of similar instances, satisfying the conditions necessary to a good custom, and so may be testified to directly. 3 Wigmore on Evidence, § 1954. The grounds of a witness' knowledge may, however, be ascertained, and when the facts upon which knowledge assumes to rest are disclosed, the propriety of the inference or conclusion is disclosed."

In some jurisdictions it has been held that "general usage" is a "fact" and can-not be established by specific examples. In the case of Green Mountain Log Co. v. Columbia & N. R. R. Co., 141 Or. 188, 16 P.2d 1106, 1108, it was sought to prove a general usage of ascertaining board feet of logs by giving specific examples of "freight scale" as the method generally employed. The court ruled:

"It was not proper, however, on direct examination to prove custom or usage by reference to particular instances wherein carriers followed certain methods of scaling logs for the purpose of determining freight charges. On direct examination, the witness, after being qualified should have been asked in substance whether he knew of any general custom or usage in the Columbia river district, during the time in question, relative to the method of scaling logs for freight charge purposes. If the witness answered in the affirmative, he should state, *as a matter of fact and not of opinion,* what was the custom. * * * On cross-examination, it would of course be proper to inquire of the witness concerning particular instances wherein certain methods of scaling had been used. The method of proving custom is analagous to that of proving reputation. * * * *Custom or usage is a matter of fact and not of opinion.* See Lawson, Usages and Customs, § 55. Any witness, though not an expert in

the particular business, is competent to testify to usage if he knows the usage. Abbott's Proof of Facts, 999." (Emphasis supplied.)

McCormick in his Handbook on Evidence, (1954) 343, states the following:

"Proof of the existence of the person's habit or custom of the business may be made by testimony of a witness to his conclusion that there was such a habit or practice. It also may be made by evidence of specific instances, though these latter would be subject to the judge's discretion to require that the instances be not too few or too many, and that the time be near and the circumstances be sufficiently similar."

See, also, 25 C.J.S. Customs and Usages § 33, p. 128, where it is stated:

"While a general custom or usage cannot be shown by evidence of particular transactions, unless sufficiently numerous to indicate a regular course of business, or by evidence of the practice of a single individual, it is permissible to show specific instances in which a usage has not been recognized in order to show its nonexistence, or to contradict evidence of its existence."

A review of the decisions of this court show that both methods have been used to prove "general use" under the Workmen's Compensation Act. Cf. Jones v. International Minerals & Chemical Corporation, 53 N.M. 127, 202 P.2d 1080, where specific uses by individual potash companies were set forth in evidence; and, Apodaca v. Allison & Haney, 57 N.M. 315, 258 P.2d 711, where the general practice of contractors was put in evidence.

We hold that witnesses qualified to do so may testify directly as to general use of safety devices in an industry and are not restricted to giving particular examples thereof.

Appellants further contend that testimony should have been confined to practices of employers in industries in which the Zia Company was engaged. Appellants' argument that because Zia Company was engaged in city management and maintenance at Los Alamos that evidence of general use should have been confined to practices of companies in city management and maintenance is not well founded. Zia Company was also engaged in road construction and maintenance and in the business of supplying electric power to the City of Los Alamos. Cities usually contract these businesses to others. The company also used several large cranes in connection with its various enterprises.

The word "industry" has been variously defined. In People ex rel. Fullam v. Kelly, 255 N.Y. 396, 175 N.E. 108, it was said:

" 'Trade,' as here used, has the meaning of mechanical employment or

commercial or business enterprises, while 'industries' is that branch of trade employing capital and labor. These definitions may not be exact or exclusive but signify that the idea conveyed by these words is some business or money making occupation as distinguished from the professions, the arts, or agriculture."

In Carver Mercantile Co. v. Hulme, 7 Mont. 566, 19 P. 213, at page 214, the court gave another aspect of the term "industry" as follows:

"* * * 'Industry' is defined by lexicographers to be 'habitual diligence in any employment, either bodily or mental;' and 'industrial,' as consisting in or pertaining to industry. These definitions are surely as applicable to the sale of goods, which is the chief business of a merchant, as to the transportation of goods, which is the chief business of an express carrier."

The word was also considered in Southern Pacific Co. v. State Corporation, 39 Ariz. 1, 3 P.2d 518, 521, as follows:

"* * * In this connection appellees say the word 'plant' imports a much narrower meaning than the word 'industry,' for industry may consist of several different plants; for instance, the industry of mining may consist of a power plant, a precipitating or leaching plant, a concentrator or milling plant, etc. It is true the word 'industry,' dissociated from any other word or words, comprehends all the things mentioned and more. Webster defines industry as: 'Any department or branch of art, occupation, or business; esp., one which employs much labor and capital and is a distinct branch of trade; as, the sugar industry; the iron industry; the cotton industry; agricultural industries.' "

The above indicates the many uses that can be made of the term "industry." We have pointed out numerous times that the Workmen's Compensation Act must be liberally construed, and reasonable doubts resolved in favor of employees. See, Wilson v. Rowan Drilling Co., 55 N.M. 81, 227 P.2d 365. To narrow the term "industry" to specific examples of uses among city administrators and maintainers would be too restricted. Suppose the Zia Company operated a railway in connection with city operations? It should be plain that practices among the railway industries would be the appropriate place to seek practices that would protect the worker.

Here, Zia Company was engaged in the use of cranes in road construction and maintenance work; in use of cranes in electric power supply work; and in use of cranes in city administration and maintenance. At the time of accident the decedent was assisting in moving a heavy motor. One of the heavy cranes of the Zia Company was used for this purpose. Appar-

154

ently, the industry concerned was the heavy moving and equipment industry, and we agree with appellee that the precise issue was whether or not there were reasonable safety devices in general use in connection with cranes operated in the vicinity of high voltage lines that would have protected the worker.

This case can be distinguished from Apodaca v. Allison & Haney, 57 N.M. 315, 258 P.2d 711, 714. In the Apodaca case the majority of this Court decided that evidence of practices by a gas company was admissible to show general use of safety devices by contractors constructing sewer lines. The majority of this Court held that such evidence was admissible. In the instant case the employer was engaged in several basic industries, all of which used cranes for heavy moving. If any employer should know of safety devices in general use in the heavy moving industry this one should have.

We find the evidence as to safety devices used in connection with cranes being operated near electric power lines was admissible.

The contention of appellants that evidence should have been restricted to use of safety devices in New Mexico industry is not convincing. The statute reads "reasonable safety devices in general use" and does not place a territorial limitation on the proof of that "use." It would seem logical that a practice in "general use" not only locally but universally would have greater weight in showing the employer's knowledge thereof. On the other hand a "general use" locally only would be sufficient to make an employer liable under the act if the other requirements are met. As stated in 25 C.J.S. Custom and Usages § 8:

"* * * A usage of trade may have a greater or less territorial extent, or a more general or restricted one, according to the circumstances which gave rise to it; * * *."

Where the universal "general use" differs from the local "general use" then it would be necessary to offer proof of a reasonable safety device in "general use" locally. Suppose, however, there should be only one business in the type of industry in the state. It can be readily seen that evidence of "general use" in the industry outside the state would be essential to prove a violation of the statute.

In the instant case there was no prejudice to appellants as the witness Weyland specifically testified that each of the devices which he said was in general use in other states was also in general use in New Mexico.

Holding as we do, appellants' Point IV and other argument that the court should have limited the testimony by instruction is not well taken. There being no contention that the evidence was not substantial if the evidence complained of was ad-

missible, we do not consider the weight of the evidence.

■ Under appellants' Point III complaint is made that the court failed to limit defendant's liability to a negligent failure to supply safety devices and define "negligence." The court did instruct the jury in terms of the statute as follows:

"8. You are further instructed that the only issue in this case for your consideration is whether the injury and resulting death of the decedent, Roscoe Lee Briggs, resulted from the negligence of the employer The Zia Company in failing to supply reasonable 'safety devices' (as defined in instruction No. 12) in general use for the use or protection of workmen."

Instruction No. 11 also referred to the negligence of the employer, with further instruction that the safety device must be one in general use for the protection of the workman at the time of accident. Instruction No. 13 related to "proximate cause" and No. 11B instructed the jury, as follows:

" 'General use' means a common use known to the Defendants or which in the exercise of ordinary care should have been known to them."

■ From the above it can be seen that the court instructed that the failure of the employer must be a "negligent" failure, that the safety device not supplied must be a reasonable one in general use, that the resulting accident must have been the proximate cause of the employer's failure, and that the employer must have known or reasonably should have known of the safety device at the time of the accident. The court specifically spelled out negligence and its refusal to define negligence further may not be urged as error. As we stated in Apodaca v. Allison & Haney, supra:

"The act here involved was passed to compel employers to supply reasonable safety devices in general use for the protection of the workmen where safety devices are not specified by law. Only by observing it may employers avoid liability under it for compensable injuries to their employees. It is negligence to fail to do so if the facts render the act applicable."

See, also, Wright v. Schultz, 55 N.M. 261, 231 P.2d 937.

The trial court did not commit error against the defendants in its instructions as to negligence.

The judgment of the trial court will be affirmed, and attorneys' fees in the amount of $750 for services in this Court will be awarded to appellee.

It is so ordered.

LUJAN, C. J., and SADLER and COMPTON, JJ., concur.

KIKER, J., not participating.