508 P.2d 1324

**Susan Kathlyn CARTER, Plaintiff-Appellant,**

**v.**

**BURN CONSTRUCTION COMPANY, INC., and Employers Commercial Union Insurance Group, Defendants-Appellees.**

**No. 894.**

Court of Appeals of New Mexico.
Jan. 26, 1973.
Rehearing Denied Feb. 20, 1973.
Certiorari Denied March 28, 1973.

Glenn B. Neumeyer, Sosa & Neumeyer, Las Cruces, for plaintiff-appellant.

Edward E. Triviz, Las Cruces, for defendants-appellees.

## OPINION

HERNANDEZ, Judge.

Plaintiff as widow of Robert Carter, deceased, and in behalf of their minor child filed a claim for workmen's compensation benefits. The trial court granted defendant's motion for summary judgment and plaintiff appeals.

The ultimate issue is whether the trial court erred in deciding that the accident, which resulted in Robert Carter's death, did not arise out of and in the course of his employment, as a matter of law. Section 59–10–2, N.M.S.A.1953 (Repl.Vol. 9, pt. 1).

The essential facts are undisputed. The deceased was employed by the defendant, Burn Construction Company, Inc., as a "grease monkey". The truck that he was driving at the time of the accident was furnished him for the purposes of his employer and incidental to his work he was required to drive it home. At the time of the accident he was following what was the most direct and convenient route home. The exact time he left work is not known, however, it is known that at about 5:30 p. m. he arrived at the Red Carpet Lounge where he joined two other employees. He spent the next four and one-half hours there drinking beer, playing pool, and conversing with his friends. The exact amount of beer consumed by the deceased is not known. However, the record does disclose that at the time the deceased started to leave, which was about 10 p. m., one of his co-employees offered to drive him home because he thought he was too intoxicated to drive. The question of the deceased's intoxication, as a defense, is not before us. We mention this incident because we do believe that it is a factor, which together with the length of time spent by the deceased at the Lounge, must be considered in determining whether he had abandoned his employment or whether these events could be considered a minor deviation so that when he resumed his journey home he was once again within the scope of his employment. The accident occurred on Friday, May 29, 1970 at about 10:15 p. m. The truck, for no apparent reason, went out of control, rolled over and burned.

■ The applicable rules are well established: Ordinarily injuries sustained by an employee while on his way to work or after leaving are not compensable. Rinehart v. Mossman-Gladden, Inc., 77 N.M. 470, 423 P.2d 991 (1967); Martinez v. Fidel, 61 N.M. 6, 293 P.2d 654 (1956). But there are exceptions to the rule. One such is where the employer agrees to and does furnish transportation to and from work. Barrington v. Johnn Drilling Co., 51 N.M. 172, 181 P.2d 166 (1947). An employee, who while on a trip in the course of his employment, makes a minor deviation for personal reasons, is outside the scope of his employment during the deviation. However, once he returns to the route of the business trip he re-enters the scope of his employment and responsibility attaches. Lockwood v. Board of Trustees, Speedway Meth. Ch., 144 Ind.App. 430, 246 N.E.2d 774 (1969); Woodley v. Rossi, 152 Conn. 1, 202 A.2d 136 (1964). Very minor deviations are disregarded or considered as part of the employment agreement. Sullivan v. Rainbo Baking Company, 71 N.M. 9, 375 P.2d 326 (1962); Whitehurst v. Rainbo Baking Company, 70 N.M. 468, 374 P.2d 849 (1962). However, if in the course of a business trip an employee makes a major deviation, major because of its duration in time or because of its nature, or both, it can be said that as a matter of law he has abandoned his employment. Then, regardless if he returns to the route of the business trip, this does not in and of itself return him to the scope of employment and an injury occurring after this does not arise out of or in the course of his employment. Johnson v. McGehee Brothers Furniture Company, 256 So.2d 741 (La.App. 1972); Alford v. Quality Chevrolet Co., 246 N.C. 214, 97 S.E.2d 869 (1957); Dooley v. Smith's Transfer Co., 57 A.2d 554, 26 N.J.Misc. 129 (1948).

■ This record demonstrates a major deviation and compels the conclusion that the deceased had abandoned his employment and was merely pursuing his own pleasure.

Plaintiff argues that there were several errors committed by the trial court which had they not occurred would have allowed the consideration of evidence that could have materially influenced its decision in granting defendant's motion for summary judgment.

The first of these is that the trial court erred in granting defendant's motion to strike subpoena duces tecum issued pursuant to Rule 45(b), (§ 21–1–1(45)(b) N. M.S.A.1953 (Repl. Vol. 4)), and an affidavit by plaintiff's counsel in opposition to defendant's motion for summary judgment. The motion for summary judgment was filed September 29, 1971 and was set for hearing on October 19, 1971. On October 18, 1971 plaintiff's attorney filed his affidavit in opposition to the motion which related in part that:

"In the course of his representation of the plaintiff, deponent has spoken with several witnesses and related here is the substance of the information gathered."

He then went on to recite what they had told him and that they had stated they would be willing to testify if asked. Attached to the affidavit were copies of the accident report, the death certificate, and the copy of a statement of a witness taken by defendant's insurance carrier. The affidavit also recited that deponent had taken various pictures of the scene of the accident which would be presented at the hearing and that an examination of an El Paso map would show that the deceased had traveled several miles before the accident without incident. It also recited that "deponent believes that the defendants and their counsel have among the papers in their files various statements from persons having knowledge concerning the accident. They are being subpoenaed for production on the return of this motion."

Section 21–1–1(56)(e) N.M.S.A.1953 (Repl. Vol. 4) provides in part:

"Supporting and opposing affidavits [referring to motions for summary judgment] *shall be made on personal knowledge, shall set forth such facts as would*

*be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.* Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." § 21–1–1(56)(e), N. M.S.A.1953 (Repl. Vol. 4). [Emphasis ours] Rekart v. Safeway Stores, Inc., 81 N.M. 491, 468 P.2d 892 (Ct.App.1970).

■ Clearly this affidavit did not comply with the provisions of rule (56)(e) supra, and the trial court did not err in striking it.

■ A copy of the subpoena duces tecum does not appear in the record. However, other documents in the record reflect that plaintiff's counsel sought to subpoena defendant's counsel and any statements in his possession made by certain individuals concerning this case. Our rules of civil procedure like the federal rules after which they are patterned, are designed to enable parties to easily discover all of the relevant facts and therefore the discovery provisions should be given as liberal an interpretation as possible in order to effectuate this design. Davis v. Westland Development Company, 81 N.M. 296, 466 P.2d 862 (1970). However, confronting the desire not to stultify the purposes of discovery is the equally compelling desire to protect our adversary system of litigation. Under our system it is important that the privacy of a lawyer be protected in doing whatever is necessary to properly prepare his case. Equally important is the preservation of the competitiveness of our system which we believe would be adversely affected should a lawyer be compelled to disclose his work to opposing counsel without some compelling reason. We are speaking here of nonprivileged facts. The statements which plaintiff sought fall outside the scope of the privilege of attorney-client. However, they were the statements of witnesses whose identity was known and who could have been deposed by plaintiff or their statements obtained directly. There was no

showing of necessity for the production of statements or alternatively that injustice would result if they were not made available. We therefore hold that a burden rests upon the party, who seeks the production and inspection by subpoena or court order of any information, memoranda, briefs, communications, reports, statements or other writings prepared by a lawyer or at his direction for his own use in prosecuting his client's case, to establish that there is good cause why the desired material should be made available to him. To establish good cause a party must show that the material sought is not available upon the exercise of diligent effort and that it is necessary for the preparation of his case, or that the denial of the production and inspection of the material sought will unfairly prejudice his case or cause him undue hardship or injustice. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451; Ford Motor Company v. Havee, 123 So.2d 572 (Fla.App.1960); Alltmont v. United States, 177 F.2d 971 (3rd Cir. 1949); United States v. 6.82 Acres of Land, etc., 18 F.R.D. 195 (D.N.M.1955).

The trial court did not err in striking the subpoena duces tecum.

■ Plaintiff argues that there was evidence that the deceased received a phone call just before he left the Red Carpet Lounge and that he probably left in response to this call because he did not even wait to eat a hot dog he had ordered. The testimony as to the phone call came from the deposition of John Harrison Poor one of the deceased's fellow employees who was with him at the Lounge. Poor testified that the barmaid at the Lounge told him that the deceased had ordered a hot dog and then he received a phone call and that he left immediately without eating it. The deceased's wife, when questioned concerning this phone call, denied having made it. There was no evidence as to who made the call. Plaintiff then goes on to argue that it was defendants' affirmative duty to prove that the call had not been made by one of deceased's suprevisors call-

ing him "out of the bar for duty purposes". Plaintiff then concludes that since defendants failed to make this proof that there remained the possibility that the deceased left in response to a call from his employer and was in the course of his employment when he was killed. He goes on to contend that this then presented a genuine issue as to a material fact and the granting of the motion for summary judgment was error on this ground as well as the others previously stated. Plaintiff's contention is novel to say the least. He would have the law impose the considerable burden of proving the negative upon the defendants on the basis of a hearsay statement and then penalize them for failing to meet the burden by denying their motion for summary judgment. The law in New Mexico still remains that "the party alleging the affirmative has the burden of proof". J. A. Silversmith, Inc. v. Marchiondo, 75 N. M. 290, 404 P.2d 122 (1965).

Plaintiff also contends that during the taking of depositions that the questioning by defendants' counsel were leading and intimidating regarding decedent's intoxication. Having decided the issue as a matter of law on undisputed facts not involving intoxication we need not decide plaintiff's contention.

We affirm.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

Summary judgment took a turn to the right as follows in Goodman v. Brock, 83 N.M. 789, 498 P.2d 676 (1972):

1. The "slightest doubt" theory as to material facts which foreclosed summary judgment was thrown out even though this "is actually another way of stating that there is no genuine issue as to any material fact." National Screen Service Corp. v. Poster Exchange, Inc., 305 F.2d 647 (5th Cir. 1962).

2. The rule now is that the plaintiff is to be given the benefit of all "reasonable doubts" in determining whether a genuine issue exists. If there are such "reasonable doubts" summary judgment should be denied. The word "reasonable" is substituted for the word "slightest."

3. Whether or not a genuine issue of fact exists depends on the peculiar facts of each case.

4. A substantial dispute as to a material fact forecloses summary judgment, even though a summary judgment may be granted *only* where the facts are clear and undisputed. Johnson v. J. S. & H. Construction Co., 81 N.M. 42, 462 P.2d 627 (Ct. App.1969).

5. The purpose of Rule 56 is to dispose of groundless claims, or claims which cannot be proved.

First, what is meant by giving the plaintiff "the benefit of all reasonable doubts" in determining whether a genuine issue exists?

The term "reasonable doubt" as applied in criminal cases is not applicable because life or liberty is not at stake. Cole v. Oil & Gas Co., 127 W.Va. 762, 35 S.E.2d 25 (1945), 160 A.L.R. 970. See, Mishara v. Albion, 341 Mass. 652, 171 N.E.2d 478 (1961). In fact, it is impractical to frame a satisfactory definition. Kane v. Hibernia Insurance Co., 39 N.J.L. (10 Vroom) 697, 23 Am.Rep. 239 (1877). It has been said that the term "reasonable doubt" is so plain that an attempt to explain it is apt to lead to confusion. K. of P. v. Steele, 108 Tenn. 624, 69 S.W. 336 (1902).

In territorial days, our court said: "It is difficult to define a 'reasonable doubt' in any plainer terms than the words themselves import." Chavez v. Territory, 6 N. M. 455, 463, 30 P. 903, 905 (1892).

In Hickey v. District Court of Kossuth County, 174 N.W.2d 406, 409 (Iowa 1970), the court said:

"Reasonable doubt" as used in section 783.1 exists when, after consideration of all relevant facts, one's mind is left in

such a condition that he cannot honestly say he feels an *abiding conviction* to a moral certainty as to the truth of the matter, and "doubt" is an attitude of mind toward the acceptance of or belief in a proposition, theory, or statement in which the judgment is not at rest but inclines alternately to either side. [Emphasis added]

In Goodman v. Brock, supra, the Supreme Court said:

As above indicated, we are *firmly convinced* that the matters relied upon by defendants . . . in support of their motion for summary judgment were sufficient to support their burden. We are also *convinced* that plaintiff failed to come forward with anything which demonstrated that a genuine issue of fact exists . . . [Emphasis added]

To be convinced is to be positive "beyond all doubt" "beyond reasonable doubt" and without any uncertainty. The line has been drawn at intangible speculation. United States v. Mt. Vernon Mill Co., 345 F.2d 404 (7th Cir. 1965); Chesapeake & Ohio Ry. Co. v. International Harvester Co., 272 F.2d 139 (7th Cir. 1959). Goodman v. Brock, supra, proves that a trial court, the court of appeals and the Supreme Court may all differ as to the meaning of "reasonable doubt."

It is obvious that "reasonable doubt" constitutes a play on words. To read the cases on the subject proves it. To me, in this case, it means that if a trial or appellate court is convinced there is an uncertainty whether a genuine issue of fact exists, it votes in favor of the plaintiff. Doubts must be resolved against the defendant. Edwards v. Mazor Masterpieces, Inc., 111 U.S.App.D.C. 202, 295 F.2d 547 (1961); Moutoux v. Gulling Auto Electric, Inc., 295 F.2d 573 (7th Cir. 1961).

In workmen's compensation cases, "We are committed to the doctrine that the Workmen's Compensation Act must be liberally construed, and reasonable doubts resolved in favor of employees." Wilson v. Rowan Drilling Co., 55 N.M. 81, 94, 227

P.2d 365, 373 (1950); accord, Briggs v. Zia Company, 63 N.M. 148, 315 P.2d 217 (1957).

This play on words is valueless in workmen's compensation cases because all issues of fact are tried by the court. Section 59–10–13.1, N.M.S.A.1953 (Repl. Vol. 9, pt. 1).

Second, the trial court granted summary judgment solely because there was "no genuine issue of any material fact that the accident and resulting fatality . . . did not arise out of and in the course of . . . decedent's employment . . . "

It is obvious that the trial court was convinced that the defendant established its burden and plaintiff failed to come forward with anything which demonstrated that the above genuine issue of fact exists. Of what value would it be to reverse? The trial court will make such findings after the trial of the case. The difference in procedure is this: (1) by way of summary judgment, an appellate court can be convinced a genuine issue of fact does exist and reverse for trial to allow the trial court to reach the same conclusion; (2) then by way of trial, the findings of the trial court supported by substantial evidence are binding on this court.

Third, in a concurring opinion in Cuellar v. American Employers' Ins. Co. of Boston, Mass., 36 N.M. 141, 148, 9 P.2d 685, 689 (1932), Justice Watson said:

The situation of the workman on his way to and from his duties had long been a no man's land.

It still is.

It should be pointed out that § 59–10–12(1), N.M.S.A.1953 (Repl. Vol. 9, pt. 1) which is now § 59–10–12.12, N.M.S.A.1953 (Repl. Vol. 9, pt. 1, Supp.1971) applies to extra-hazardous employment. Martinez v. Fidel, 61 N.M. 6, 293 P.2d 654 (1956), and McDonald v. Artesia General Hospital, 73 N.M. 188, 386 P.2d 708 (1963), were wrong and each case should be overruled because a chambermaid in a hotel and a nurse in a hospital, while leaving the place of employment, are not engaged in extra-

hazardous occupations or pursuits as defined by § 59–10–10, N.M.S.A.1953 (Repl. Vol. 9, pt. 1). The same wrongful application of § 59–10–12.12, supra, has been applied in other cases. The only section applicable to a non-hazardous occupation or pursuit is § 59–10–13.3(A), N.M.S.A.1953 (Repl. Vol. 9, pt. 1). See, Hernandez v. Border Truck Line, 49 N.M. 396, 165 P.2d 120 (1946).

Fourth, § 59–10–13.3(A), supra, provides in part:

Claims for workmen's compensation shall be allowed only:

(1) when the workman has sustained an accidental injury arising out of, and in the course of his employment;

(2) when the accident was reasonably incident to his employment;

. . .

Decedent's estate was entitled to workmen's compensation if either provision was applicable. See, Green v. Manpower, Inc., of Albuquerque, 81 N.M. 788, 474 P.2d 80 (Ct.App.1970).

Plaintiff's complaint was verified. It alleged that "decedent was accidentally injured in an industrial accident arising out of and during the course of his employment by the defendant and he died as a result of the injuries received." The deponent was decedent's wife. Her affidavit reads in part as follows:

That deponent has read the foregoing and that the same is true according to deponent's own knowledge. . . .

The rule is, however, that the verification "is insufficient as an affidavit because there is no affirmative showing that [Mrs. Carter] is competent to testify as to those matters." Rekart v. Safeway Stores, Inc., 81 N.M. 491, 468 P.2d 892 (Ct.App.1970). In fact, no such evidence appeared in her deposition.

The clear and undisputed facts are that decedent was employed by defendant Burn as a "grease monkey." His duties were to fuel and service defendant's equipment.

Defendant Burn assigned decedent a service truck to use. Decedent brought the truck home every night after work, including most Saturdays and some Sundays, and would leave each morning to service pieces of equipment wherever the equipment was located. He worked many hours of overtime, at least fifteen to twenty hours per week, and almost every day of the week.

On the night of the accident, decedent arrived at a bar between five-thirty and six-thirty, p. m., and remained until 10:00 p. m. He then left and drove what was the most direct and convenient route home. The accident occurred on this route. It did not occur on his route to the bar.

A reasonable inference can be drawn that defendant Burn furnished him the truck with permission or direction to drive it home, incidental to his employment, in order to service defendant's pieces of equipment the following morning; that there were no fixed hours required to be observed; and that the use of the truck was for the mutual benefit of the defendant and the decedent. The vehicle was furnished decedent as an incident of his work. Under these circumstances, the accident which occurred on his way home was "reasonably incident to his employment" and, in fact, occurred in the course of his employment.

In any event, if any reasonable doubts exist, decedent must be given the benefit of all of them in determining whether this genuine issue exists, Goodman v. Brock, supra, and these reasonable doubts must be resolved in decedent's favor.

It has long been the rule in New Mexico that where an employer furnished transportation to and from work in the deceased's car, not the defendant's, as a part of his contract of employment, the injury and death of the workman arose out of and in the course of his employment. Barrington v. Johnn Drilling Co., 51 N.M. 172, 181 P.2d 166 (1947); Wilson v. Rowan Drilling Co., supra. This was also true when an employee was directed by his employer to go to Roswell to work as a fore-

man, McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867 (1944). Rinehart v. Mossman-Gladden, Inc., 77 N.M. 470, 423 P.2d 991 (1967), can be distinguished because driving the employer's vehicle to and from work was not incidental to his employment.

Fifth, did the three and a half or four and a half hour visit at the bar constitute an abandonment of his employment? The answer is "no."

Parr v. New Mexico State Highway Department, 54 N.M. 126, 215 P.2d 602 (1950), answers the question. Here, the decedent, a project engineer, was in Bloomfield and advised an employee of his intention to call that night on the foreman in charge of the La Plata job. It would be necessary to pass through Farmington to visit this job. While in Farmington, he visited his father who was desperately ill at a hospital, and, thereafter, he resumed travel on the journey which occasioned the trip. The Supreme Court held that this visitation "would not deny his trip character as in the course of his employment."

Frederick v. Younger Van Lines, 74 N. M. 320, 393 P.2d 438 (1964), quoted from *Parr*, supra. Frederick was operating defendant's truck on a return trip from Denver to his destination in Hobbs when the accident occurred. An hour and a half was spent stopped by a stream. A direct route home was not taken. At the time of the accident, Frederick was not "aimed at reaching some specific personal objective." The court ruled as a matter of law that a finding of material deviation from the direct course to Hobbs was based on guesswork and cannot be sustained.

In McKinney v. Dorlac, supra, the decedent stopped his automobile an hour or more in a bar and cafe while on his way to work in Roswell. This did not constitute so great a deviation from pursuit of his journey to bar recovery.

See also, Ark. Power and Light Company v. Cox, 229 Ark. 20, 313 S.W.2d 91 (1958); Sherrill & LaFollette v. Herring, 78 Ariz. 332, 279 P.2d 907 (1955); 99 C.J. S. Workmen's Compensation § 222 c, p.

748, note 49, where *Parr*, supra, is cited under "return to employment."

I am convinced that decedent, at the time of the accident, sustained an accidental injury arising out of, and in the course of his employment, and the accident was reasonably incident to his employment. Defendant did not make an affirmative showing that there were no factual issues. It was not entitled to summary judgment.