# HARVEY D. DAVIS and CLARENCE FISHER, Plaintiffs in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. July 31, 1969.

Certiorari Denied by Supreme Court Sept. 15, 1969.

480

Hugh W. Stanton, Jr., Memphis, for plaintiffs in error.

George F. McCanless, Atty. Gen., Albert D. Noe, IV, Asst. Atty. Gen., Nashville, William D. Haynes, Phillip Kuhn, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

OLIVER, Judge.

Jointly tried in the Criminal Court of Shelby County under an indictment charging Harry Lee, Herbert E. Moore, Harvey D. Davis and Clarence Fisher with the first degree murder of one Willie Pigram, Lee and Moore were acquitted and Davis and Fisher were convicted of second degree murder and sentenced to imprisonment for not more than fifteen years in the State Penitentiary. Their motion for a new trial being overruled, the defendants Davis and Fisher prayed and were granted and have perfected an appeal in the nature of a writ of error to this Court.

At the outset it should be noted that the defendants do not here challenge the sufficiency of the evidence to sustain the verdict of the jury, notwithstanding they specifically raised that contention in their motions for a new trial, except insofar as they insist by the Third Assignment of Error that there is no competent evidence of the *causa mortis* or that the death of the deceased was due to any act by either of them or by any co-defendant. This is the only Assignment of Error in which both Davis and Fisher can be said to have joined, because both of them asserted the same proposition in their respective

and separate motions for a new trial. All the other Assignments of Error are Davis'. Fisher did not testify.

In the evening of November 4, 1966, answering a call to South Fourth Street in Memphis, policemen found the deceased, a 60-year-old Negro man, lying unconscious in a driveway near the edge of the street. He appeared to be in a very drunken condition. He was removed to the hospital where he died in the early morning hours of November 6th. The County Medical Examiner performed an autopsy. He testified that death resulted from a blow on the head with a blunt instrument; that the bruise to the top of the brain was about six inches long running from the right rear across the head to the left front and about two inches wide; that it could not have resulted from a blow to the deceased's jaw, nor by falling on concrete. There is no evidence that the deceased fell or was otherwise injured while in the hospital. He received adequate medical treatment and care there. There is no evidence to the contrary. He was in good health prior to the fatal injury, although disabled and receiving some kind of disability compensation.

 In a homicide case it must be fully and satisfactorily proved that the death was neither occasioned by natural causes, by accident, nor by the deceased himself. Persons v. State, 90 Tenn. 291, 16 S.W. 726. It is well settled that the opinions of physicians as to the cause of death of any particular person are admissible in evidence, whether founded upon personal knowledge of the facts or upon the statement of the symptoms as detailed by others. If such opinions were not received, in many cases it would be impossible to know or ascertain the

cause of death. Knights of Pythias v. Steele, 108 Tenn. 624, 69 S.W. 336; Interstate Life and Accident Company v. Cox, 55 Tenn. App. 40, 396 S.W.2d 80.

Jacqueline Greer, seventeen, her fifteen-year-old brother Anthony, and Eldridge (Mickey) Cannon, also fifteen, witnessed the incident from almost directly across the street. Jacqueline testified that she saw three boys, whom she did not then recognize, around the deceased; that one boy had a fence stick or a plank and she saw it "come down" in a short stroke but didn't see the blow land; that the deceased didn't fall but the boys helped him down on the ground; and that after the deceased was down one of the boys went into his pockets. Anthony testified he did not see the deceased struck but heard the blow, a "loud smacking sound," and saw him fall; that he saw what looked to him like a fence board or plank about 1″x4″x3′ or 1″x6″x2′, but didn't see how it was used; that the one that patted the deceased's pockets had the stick; and that as deceased started to fall one of the boys caught him and laid him down on the ground. Both of these witnesses said there is a wood fence nearby. From this evidence the jury could justifiably find that one of these defendants struck the deceased a lethal blow on the head with a fence paling or board.

In his first Assignment of Error, defendant Davis contends that he was prejudiced by the trial court's refusal to grant his petition for a severance, and in requiring him to stand trial with the other three co-defendants. It is axiomatic that this is a matter that must be left to the sound discretion of the trial court, and he will not be put in error for failure to grant a severance unless it can be shown that the defendant was clearly

prejudiced thereby. Monts v. State, 218 Tenn. 31, 400 S.W.2d 722; Ellis v. State, 218 Tenn. 297, 403 S.W.2d 293; Tomlin v. State, 207 Tenn. 281, 339 S.W.2d 10; Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385.

Davis' fifth Assignment of Error is also predicated principally upon the trial court's refusal to grant him a severance and a separate trial. We shall make further reference to other aspects of that Assignment later.

In the defendants' motion or petition for a severance they stated, as the basis therefor, (1) that three of the defendants had given statements involving other defendants "to a more or less degree of incrimination," (2) that Davis denied any participation in the homicide, (3) that evidence incompetent as to one defendant would be admissible as to other defendants, "and thereby prejudicial to the defendant to whom it would not apply," (4) that evidence incompetent as to one will react and prejudice the jury against other defendants, (5) that there "well may be evidence denied a defendant under a joint trial that would be available under a separate trial," and (6) that "it is impossible for the jury to delineate, and distinguish the many facets of proof applicable to each of the several defendants, and apply the pertinent evidence to the particular defendant, when tried jointly."

In other words, the real basis of the severance petition or motion was the knowledge that three of the defendants had made extra-judicial statements and all of them feared that if those statements were admitted the jury would be unable to separate the chaff from the wheat and thus would be prejudicially influenced against them.

In a hearing apart from the jury upon the preliminary

question of the admissibility of oral and written statements made during custodial police interrogation by Davis, Lee and Moore, the court properly found and correctly ruled that those statements were made voluntarily after those defendants were properly apprised of their constitutional rights, and intelligently waived them, in accordance with the precepts of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R. 3d 974. They were all present when their statements were reduced to writing and signed.

The investigating officer who conducted the custodial interrogation of these three defendants identified their signed written statements and they were then admitted in evidence and read to the jury. In each of the three statements, the name of Fisher had been blanked out under instructions of the court because he was not present during the interrogation of the other three defendants, and when the witness read those statements the word "blank" was used in lieu of Fisher's name wherever it appeared. However, during the course of presenting these statements the identity of "blank" was made abundantly clear to the jury by the court's precautionary instructions regarding permissible consideration and use of the statements.

In Lee's statement he said that he saw Davis hit the deceased one time with his hand and the deceased fell; that Fisher searched the deceased, and that Davis also turned him over and went through his pockets; that he did not see a billfold, money or anything else removed from the deceased's pockets; and that later that night he borrowed a dollar from Davis. Lee testified as a witness in his own defense, and generally reaffirmed his written

pre-trial statement. He said that he heard nothing said by anyone about money being taken from the deceased; that he did not see the deceased give anyone a drink from his bottle and does not know what became of it; that he and Moore were approaching the scene as these events occurred; and that he did not hear the deceased curse Davis or say anything to him.

In Moore's pre-trial written statement he said that as he and Lee approached the scene the deceased offered him a drink from his vodka or gin bottle and he thinks he took one; that the deceased was staggering drunk; that he saw Davis hit the deceased one time with his fist and "he fell hard"; that Fisher then went through the deceased's pockets; that Davis asked Fisher how much money the deceased had, and Fisher replied that the man had $10, and that he saw Fisher with a billfold. Moore's testimony substantially paralleled his written pre-trial statement.

In Davis' pre-trial statement he said that he did not strike the deceased; that he and Fisher were together, came upon the deceased who asked him "where Lauderdale is" and he gave him that information; that the deceased had a bottle of gin and asked him if he wanted a drink; that he took the deceased's bottle and took a drink, and was intending to run away with the gin; that Fisher asked the deceased if he had change for $5 and received a negative reply; that Lee and Moore approached about this time; that Fisher struck the deceased a staggering blow, that Lee also hit him, the deceased fell in the driveway and Fisher went into his pockets; that after the four co-defendants left the scene and started on, Fisher said the man had $5, and that after buying a bottle of liquor

they divided the rest of the money between them. As a witness in his own behalf Davis testified that he and Fisher came upon the deceased on Fourth Street and he asked the way to Lauderdale Street and Davis told him; that the deceased asked him if he wanted a drink of whiskey from a bottle he had in his hand; that Davis took a drink and the deceased complained that he drank too much and became angry about that; that he returned the deceased's bottle to him and started to walk off and the deceased grabbed him by the shoulder and cursed him; that he then struck the deceased on the jaw and knocked him down, that the deceased fell hard on the concrete and appeared to be hurt and rendered unconscious, and that he did not hit the deceased with a stick; that Moore and Lee were approaching about the time he hit the deceased; that he did not go through the deceased's pockets and did not see Fisher or anyone else do so, and that no money was divided between them; that he tried to tell the foregoing facts to the interrogating officer, and "that's when they started beating me," and that he was scared as a result of the police mistreatment and "couldn't say exactly what I said" but didn't tell the officers that Fisher struck the deceased, nor that Lee did so, nor that Fisher went into the man's pockets, but admitted that he did read his written statement and signed it.

When the extra-judicial written statements of the defendants were being presented and admitted during the testimony of the interrogating officer, and during the testimony of Lee and Moore and Davis, the court repeatedly instructed the jury that the statements could not be considered against Fisher because he was not present

when the statements were made, and also that they could not be considered against a defendant incriminated therein who denied participation in the crime.

Although in their written pre-trial statements neither Lee nor Moore nor Davis inculpated themselves, and neither statement is a confession or admission, what our Supreme Court said in Ellis v. State, 218 Tenn. 297, 403 S.W.2d 293 is appropriate and helpful in the resolution of the severance questions here presented:

> "The only possible prejudice to defendant was the statements made by his co-defendants implicating him and introduced into evidence. As a general rule such statements are admissible if the trial judge properly instructs the jury, as in the case at bar, not to consider them against defendants not present when such statements were made. Thompson v. State, 171 Tenn. 156, 101 S.W.2d 467 (1937); Kennedy v. State, 186 Tenn. 310, 210 S.W.2d 132 (1946); Kirkendoll v. State, 198 Tenn. 497, 281 S.W.2d 243 (1954); Monts v. State, 214 Tenn. 171, 379 S.W.2d 34 (1964). In Stallard v. State, 187 Tenn. 418, 215 S.W.2d 807 (1948) this court cited with approval the following from 23 C.J.S. Criminal Law § 935:
>
>> "If one of several defendants jointly indicted has made admissions or confessions involving another defendant, the court may, in its discretion, order a separate trial, so that the admissions or confessions, while evidence against the one, may not prejudice the other, and where the circumstances are such that an instruction to disregard the confession of one when considering the guilt of another would prove

ineffective to eradicate the impression on the jury the severance should be granted, unless the prosecuting attorney expressly declares that such statements will not be offered in evidence on the trial, or unless all reference to the moving defendant is eliminated from the confession. 187 Tenn. 429, 215 S.W.2d 812.

"Under the above statement in the Stallard case the decision can be made on whether, in light of all the evidence, the instruction of the trial judge is effective in eradicating from the minds of the jury the impression made by the confession in considering the guilt of a defendant against whom, in a separate trial, the confession would not be admissible. In making this decision in the case *sub judice* the case of People v. Feolo, 282 N.Y. 276, 26 N.E.2d 256 (1940) is helpful and the court said:

"When defendants are jointly indicted, the question whether there should be separate trials is addressed primarily to the practical good judgment of a trial judge. In the ordinary case, a ruling directing a joint trial will be on the same side, though confessions or admissions made by one defendant will not be binding on another. * * * The point at which discretion ends and severance becomes a duty is at times hard to fix. * * * Here the duty to sever was clear before the trial began, though that is not a controlling consideration now. In People v. Fisher, [249 N.Y. 419, 164 N.E. 336] supra, we said: 'A retrospective view by an appellate court may reveal injustice or impairment of substantial rights unseen at the beginning. *In a case where, without the*

*existence of a confession by one defendant, the evidence against another would be too weak to justify a conviction or even where a conviction would be doubtful, or [our] review of the judgment would compel us to conclude that an abuse of discretion has been committed.* One who makes no confession must be found guilty, if at all, only on proof independent of a confession by a codefendant.' 282 N.Y. 276, 26 N.E.2d 258. (Emphasis supplied.)"

Also in Monts v. State, 218 Tenn. 31, 400 S.W.2d 722, the Court said:

"In Turner v. State, 187 Tenn. 309, 213 S.W.2d 281 (1948), the reason for refusal of the trial court to grant a severance is set forth in this language:

"It may have been to the interest of each that he be tried alone, but the orders of the court are molded to protect rights, and not merely the interests, of persons accused of crime. The state, as well as the person accused, is entitled to have its rights protected, and, when several persons are charged jointly with a single crime, we think the state is entitled to have the fact of guilt determined and punishment assessed in a single trial, unless to do so would unfairly prejudice the rights of the defendants. 187 Tenn. at 316, 213 S.W.2d at 284.

\* \* \* \* \* \*

"In Monts v. State, supra, 214 Tenn. at 190, 379 S.W.2d at 42, it was said:

"This Court has repeatedly held that when two or more defendants are tried jointly, a confession made

by one of them, which confession incriminates one or more of the other defendants, is not rendered inadmissible because of the fact that it was made outside the presence of the other defendant or defendants incriminated therein. Such a confession is admissible under these circumstances; but it is incumbent upon the trial judge to instruct the jury that the confession is only competent evidence against the defendant making it and that it must not be considered by them against any defendant not present when it was made. Thompson v. State, 171 Tenn. 156, 101 S.W.2d 467 (1937); Porter v. State, 177 Tenn. 515, 151 S.W.2d 171 (1941); Kennon v. State, 181 Tenn. 415, 181 S.W.2d 364 (1944); Kennedy v. State, 186 Tenn. 310, 210 S.W.2d 132 (1947)."

■ The same principles are equally valid and must necessarily apply where, as here, the pre-trial statements of co-defendants exculpate their respective authors and incriminate the others.

■ Moreover, it is important to bear in mind that, as above indicated, the co-defendants Lee, Moore and Davis testified at length and were subjected to extended and detailed cross-examination by counsel for each of the other three co-defendants. So that while it may have appeared in the beginning that the trial judge was under a duty to the defendants to grant a severance and accord them separate trials, that is not a controlling consideration now. And a retrospective view clearly demonstrates, in our judgment, the defendant Davis was not denied a fair trial or otherwise prejudiced by the trial court's refusal to grant him a severance.

Further with respect to admission of the pre-trial statements of Lee and Moore, Davis complains in his second Assignment of Error that the court erred to his prejudice in admitting those statements without adequate and proper instruction to the jury not to consider them against him because in his own statement he gave an entirely different version of the facts and in effect denied the statements of Lee and Moore. In the first place, as we have indicated, the court repeatedly gave the jury just such an instruction. In the second place, it would appear that the defendant Davis is here undertaking to invoke Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, made retroactive and applicable to the states in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100.

In *Bruton,* the admission of a co-defendant's extra-judicial confession that implicated the defendant at a joint trial, at which the co-defendant *did not testify,* was held to constitute prejudicial error which was not cured by clear and concise and understandable instructions to the jury by the trial judge that the confession could only be used against the co-defendant and must be disregarded with respect to the defendant. The fundamental basis of the *Bruton* rule, aside from the fact that the co-defendant's confession incriminating the defendant was hearsay, was that when the co-defendant did not take the witness stand the defendant was deprived of his constitutional right to confront witnesses against him inasmuch as he was thereby denied the right to cross-examine the co-defendant. Overruling Delli Paoli v. United States 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 which held to the contrary, the Court said in *Bruton*:

"The basic premise of *Delli Paoli* was that it is 'reasonably possible for the jury to follow' sufficiently clear instructions to disregard the confessor's extra-judicial statement that his codefendant participated with him in committing the crime. 352 U.S., at 239, 77 S.Ct., at 299. If it were true that the jury disregarded the reference to the codefendant, no question would arise under the Confrontation Clause, because by hypothesis the case is treated as if the confessor made no statement inculpating the non-confessor. But since *Delli Paoli* was decided this Court has effectively repudiated its basic premise. Before discussing this, we pause to observe that in Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, we confirmed 'that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him' secured by the Sixth Amendment, id., at 404, 85 S.Ct., at 1068; 'a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him.' Id., at 406-407, 85 S.Ct., at 1069.

"* * * Here Evans' oral confessions were in fact testified to, and were therefore actually in evidence. That testimony was legitimate evidence against Evans and to that extent was properly before the jury during its deliberations. Even greater, then, was the likelihood that the jury would believe Evans made the statements and that they were true—not just the self-incriminating portions but those implicating petitioner as well. Plainly, the introduction of Evans' confession added substantial, perhaps even critical, weight to the Gov-

ernment's case in a form not subject to cross-examination, since Evans did not take the stand. Petitioner thus was denied his constitutional right of confrontation.

"*Delli Paoli* assumed that this encroachment on the right to confrontation could be avoided by the instruction to the jury to disregard the inadmissible hearsay evidence. But, as we have said, that assumption has since been effectively repudiated.

\* \* \* \* \* \*

"\* \* \* Here the introduction of Evans' confession posed a substantial threat to petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all."

■■ In this case, unlike *Bruton* and therefore unaffected by that decision, the co-defendants Lee and Moore, whose extra-judicial statements incriminated Davis, did testify and were cross-examined by Davis' counsel, and he was thus not unconstitutionally deprived of the right to confront those witnesses by cross-examination. No *Bruton* issue is presented where the co-defendants testify freely at their trial. The right of cross-examination, crucial to the Sixth Amendment right of confrontation, is not infringed. The combined facts of the co-defendants testifying at their trial and the curative

instructions of the court effectively eliminated any risk of prejudice. The second Assignment of Error is not sustained.

■ By his fourth Assignment of Error, Davis insists that admission of his extra-judicial statements was prejudicially erroneous because he was not properly advised of his constitutional rights. His insistence is that he was not warned of his constitutional rights prior to making oral statements from which his written statement was prepared. He thus undertakes to invoke the *Miranda* rule. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. But the obvious difficulty with that position is, of course, that in his own testimony in his trial he abandoned completely his exculpatory extra-judicial statement in which he also incriminated Lee and Fisher, and admitted that he was the one, and the only one, who struck the deceased, although denying that he used anything except his fist. Thus having repudiated his self-serving pre-trial statement, including his incrimination of Lee and Fisher, and having admitted assaulting the deceased, his position under this Assignment is clearly untenable.

■ We have referred previously to so much of Davis' fifth Assignment of Error as related to the matter of severance. In this Assignment he also urges that the trial court erred in admitting the testimony of one Phil M. Clayton, who testified that the night following the incident in question Fisher told him that he and Davis just hit a man in the head and he (Fisher) got $10 out of his pocket. Upon motion of Davis' counsel, the court instructed the jury that Fisher's statement to the witness should not be considered for any purpose against Davis.

So, the statement in this Assignment that the trial court failed so to instruct the jury is contradicted by the record, not to mention Davis' admitted assault upon the deceased heretofore referred to.

The sixth Assignment of Error complains that the trial court erred in declining to declare a mistrial upon Davis' application, which was predicated upon the assertion that Moore's attorney agreed to call Anthony Greer and Eldridge (Mickey) Cannon, witnesses favorable to Moore and unfavorable to Davis, in order to enable the State to be in the position of examining those witnesses by cross-examination, in consideration of which the Assistant District Attorney agreed to make a favorable recommendation regarding Moore. In the first place, this record does not support that Assignment, and the trial judge correctly held that there was no such collusive agreement, tacit or otherwise, in regard to the calling of those two witnesses; and secondly, Moore was acquitted by the jury, as heretofore noted.

The seventh Assignment of Error is directed to the Assistant District Attorney's question to Davis as to whether he threatened Eldridge (Mickey) Cannon and Anthony Green if they told anyone what they saw. Notwithstanding the court's instruction to the Assistant District Attorney that he would have to establish some predicate for such a question, Davis' counsel asked him about the same matter thereafter. He denied making any such threats. The Assistant District Attorney then asked the court to instruct the jury to disregard his question to Davis upon that subject, and the court did so after asking Davis' counsel "Is that what you want to do?" and receiving an affirmative reply. Assuming with-

out deciding that the question propounded to Davis by the Assistant District Attorney was improper, the error, if any, was thus rendered completely innocuous. Nothing more could or should have been done. State v. Robinson, 106 Tenn. 204, 61 S.W. 65.

The Assignments of Error are without merit.

 The jury fixed the defendants' sentences at not more than fifteen years in the penitentiary, and the court entered judgment accordingly. The punishment for second degree murder is imprisonment in the penitentiary not less than ten nor more than twenty years (T.C.A. § 39-2408). The indeterminate sentence law (T.C.A. §§ 40-2707—40-2710) is applicable to second degree murder. Nicholas v. State, 211 Tenn. 264, 364 S.W.2d 895; Franks v. State, 187 Tenn. 174, 213 S.W.2d 105.

 When a jury's verdict fixes only the maximum term of imprisonment (as it should) and the judgment of the court does likewise, in cases where imprisonment is subject to the indeterminate sentence law, this Court has the authority and duty to modify the sentence so as to specify both the minimum and maximum term of imprisonment. Montesi v. State, 220 Tenn. 354, 417 S.W.2d 554; Leek v. State, 216 Tenn. 337, 392 S.W.2d 456; McCullough v. State, 216 Tenn. 513, 392 S.W.2d 954. Accordingly, the judgments in this case are modified to provide that the defendants are sentenced to imprisonment for not less than ten nor more than fifteen years in the State Penitentiary.

As thus modified, the judgments of the trial court are affirmed.

WALKER and GALBREATH, JJ., concur.