# JOHNNIE WEST, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 466 S.W.2d 524.

Court of Criminal Appeals of Tennessee. Feb. 12, 1971.

Certiorari Denied by Supreme Court April 5, 1971.

Phillip E. Kuhn and Bret B. Stein, Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Terry L. Lafferty and William D. Hayes, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

RUSSELL, Judge.

The plaintiff-in-error, Johnnie West, has prosecuted this appeal in the nature of a writ of error from his first degree murder conviction and consequent ninety-nine (99) year penitentiary sentence. Memphis police officer Frank Bruno was shot to death on the night of October 7, 1960, while investigating a burglary in progress at the Ace Sundry Store. West, together with Red Monts and Joel Farris Olds, was convicted of the crime and sentenced to death by electrocution. Our Supreme Court reversed (Monts v. State, 214 Tenn. 171, 379 S.W.2d 34) and West was again tried with Monts, again convicted, and sentenced to one hundred fifty (150) years in the penitentiary. Our Supreme Court affirmed this conviction (218 Tenn. 31, 400 S.W.2d 722), but the conviction was later set aside by the United States Court of Appeals, Sixth Circuit (Monts v. Henderson, 409 F.2d 95) and this third trial followed.

The record is quite long, and the assignments of error numerous. We have carefully studied the record and

conscientiously considered all of the assignments. Those not hereinafter discussed were found to be without merit.

The legal sufficiency of the convicting evidence is questioned. The State presented a witness, Trudy Carroll, who testified that her friends, Olds, Monts and West were overheard by her as they planned the crime earlier in the evening of its perpetration. One Clarence McCord, a fellow jail inmate with West after his incarceration, testified that West admitted the crime to him, telling him in detail how he had committed it; that he had first shot the flashlight out of Officer Bruno's hand, and had then shot him through the heart. There was considerable other evidence supporting the State's case. West himself did not testify, and his witnesses were presented mainly to cast doubt upon the credibility of the State's witnesses. It is certainly accurate to say that the evidence does not preponderate against the verdict, so the assignments going to the legal sufficiency of the convicting evidence are overruled.

■ ■ Questions are raised by various assignments of error that all bear upon the proposition of discovery in criminal cases. A motion for the production of all testimony before the Shelby County Grand Jury was overruled. Defendant also had subpoenaes duces tecum issued for Inspector H. L. McAden, Captain R. A. Cochran and Captain J. D. Holt of the Memphis Police Department, requiring them to bring all memoranda, statements, tapes, and police records of State witnesses; which subpoenas were quashed upon the State's motion. The trial court also refused to compel the State to reveal the name and whereabouts of two anonymous parties who shared in the reward money for information lead-

ing to the arrest and conviction of those responsible for the slaying of Officer Bruno.

Under our law, the proceedings before a Grand Jury are secret. T.C.A. § 40-1612. This oath of secrecy can be removed to check upon the accuracy of a witness' subsequent testimony (T.C.A. § 40-1612) or whenever necessary to the attainment of truth and justice. In re Rich, 219 Tenn. 717, 413 S.W.2d 374. There is no provision in our law for the blanket discovery of Grand Jury testimony.

We do not have broad discovery as in civil cases in criminal cases in Tennessee. Our statute law provides that an accused shall be able to discover his prior confessions or admissions (T.C.A. § 40-2441). Additional statutory discovery in criminal cases in Tennessee is defined by and limited to the provisions of T.C.A. § 40-2044, which reads:

> "40-2044. *Copying certain books, papers and documents held by attorney for state.*—Upon motion of a defendant, or his attorney, at any time after the finding of an indictment or presentment, the court shall order the attorney for the State, or any law enforcement officer, to permit the attorney for the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others which are in possession of, or under the control of the attorney for the State or any law enforcement officer. The order may specify a reasonable time, place and manner of making the inspection, and of taking the copies or photographs and may pre-

scribe such terms and conditions as are just. However, such inspection, copying or photographing shall not apply to any work product of any law enforcement officer or attorney for the state or his agent or to any oral or written statement given to any such officer or attorney for the State or his agent by any witness other than the defendant."

We find no error in the complained-of rulings of the trial court in the matters assigned. Plaintiff-in-error relies upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed2d 215, and Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737. The former stands for the proposition that the suppression by the prosecution of evidence favorable to and requested by an accused violates due process where the evidence is material either to the question of guilt or to the question of punishment, irrespective of the good faith or bad faith of the prosecution. This holding is premised upon a suppression which is totally unreflected in this record. The second authority relied upon also deals with a possible prosecution suppression of exculpatory evidence.

It is true that West's counsel was seeking, blanketly, to discover anything of an exculpatory nature. However, there is a total absence of a showing that any such evidence existed. The ingenious theory that the anonymity given to two of the reward-receiving informants indicates that they would have been unfavorable witnesses for the State, else they would have been revealed and used simply does not equate with more logical assumptions. Apparently this information was obtained from penitentiary inmates, one in the Nashville penitentiary and one at Brushy Mountain. Obviously, informers in such

places have a very real need for remaining anonymous. Secondly, it could hardly be expected, in the abstract, that informants who were awarded reward money for information leading to the arrest and conviction of the plaintiff-in-error would be sources of exculpatory evidence for him.

We find no error in the complained of rulings of the trial court. And if the prosecution suppressed any exculpatory evidence it is not shown in the record.

The question of the discovery of prosecution evidence is dealt with in depth in 7 A.L.R.3d 8 and 7 A.L.R.3rd 181; and the question of prosecution suppression of exculpatory evidence is treated in 33 A.L.R.2d 1421.

Error is assigned upon the admission into evidence of the testimony of one Granville Allison, then a Memphis newspaper reporter, who testified to the contents of an in-jail interview with West. The statements of West as given to Allison were exculpatory, but did conflict with another statement attributed to West and introduced later, on the subject of his whereabouts on the night Officer Bruno was slain. Allison was in no way an undercover police agent, but was merely a newsman getting material for a subsequently printed story. West voluntarily talked freely with him, knowing his identity and the purpose of the interview. This evidence was clearly admissible.

As stated at the outset, many alleged errors (a total of twenty-two) have been assigned. We have carefully examined all of them, and feel that it would simply unnecessarily lengthen this opinion to discuss them.

We are convinced that West has had a fair and legal

trial, and that this, his third, conviction for this murder should be affirmed.

MITCHELL and O'BRIEN, JJ., concur.