Edwin HAMILTON and Billy Joe Linticum, Appellants,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

June 16, 1977.

Certiorari Denied by Supreme Court Aug. 1, 1977.

T.C.A. § 27–111, as amended.

Robert D. Lawson, Chattanooga, for Hamilton.

Jess O. Farr and Associates, Chattanooga, for Linticum.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., John W. Goza, Jr., Asst. Dist. Atty. Gen., Chattanooga, for appellee.

O'BRIEN, Judge.

## OPINION

These defendants were convicted of the first degree murder of Lee Ervin Wright, and sentenced to death by electrocution.

Defendants have filed separate briefs with assignments of error. We first review those issues raised by Hamilton.

■ This defendant says it was error to force him to trial after his counsel informed the court that defendant was partially paralyzed from a stroke suffered a few hours before.

At the beginning of the trial Hamilton moved for a continuance based on his physical condition, alleging he had incurred a stroke some hours earlier. The trial judge had personally conferred with defendant's physician and was advised defendant was physically able to go to trial. The court was concerned by the possibility defendant was feigning incapacity. The trial judge had the opportunity to observe from defendant's personal appearance whether his physical condition would enable him to stand the ordeal of a trial. Having considered the foregoing factors the judge was of the opinion that defendant was able to go to trial, and so ruled. This is a matter resting largely in the sound discretion of a trial court and we cannot see that this discretion has been abused. The assignment is overruled.

■ Defendant says the indictment against him should have been quashed on his plea of misnomer because it did not contain his correct name which was supplied with his plea. He also says the trial proceeded on an indictment originally returned by a grand jury in October, 1974 which had been changed by a different grand jury in February, 1975.

It seems that the original presentment, No. 128804, was returned on October 24th, 1974, and stated defendant's name to be *Edward* Hamilton, Sr. On February 12th, 1975, a plea of misnomer was filed indicating defendant's true name to be *Edwin* Vernon Hamilton, Sr. On February 18th, 1975, the plea was sustained and the presentment referred back to the grand jury for correction. On February 19th, 1975, a new presentment was returned by a different grand jury, under the same docket number, stating defendant's name as *Edwin* Vernon Hamilton.

Defendant cites *Holder v. State,* 143 Tenn. 229, 227 S.W. 441, as authority for the rule that an indictment may not be recommitted to a grand jury for amendment at a term subsequent to that at which it was found. This statement of the law is correct, but does not offer defendant any comfort in this case. It is true that the trial judge neither abated nor quashed the first presentment returned, and by the language of his order sustaining the plea of misnomer the presentment was referred back to the grand jury for correction. However, an examination of the Technical Record makes it plain that the February Grand Jury returned an entirely new presentment charging defendants with first degree murder. It makes no difference if the original presentment was not quashed for, as stated in *Holder,* supra:

". . . . . the State could have gone to trial on the second indictment without having first disposed of the first. If both indictments charged the same offense, the defendant, of course, could not be tried on the first indictment after a trial had been had on the second, for that would be to put him twice in jeopardy. We are unable to see how the defendant would be prejudiced where he is tried only one time on a valid indictment for a particular offense."

■ We also overrule the assignment contending that the failure to include the suffix, "senior", to defendant's name in the

presentment is reversible error. We note that counsel for defendant declined to agree to an amendment to the presentment to add the questioned suffix, although the amendment might have been made without his permission. We agree with the rule as stated in 65 C.J.S. Names, § 5b, p. 8;

"The suffix "Senior" or "Sr.," "Junior" or "Jr.," "second" or "2d," or a word of similar import, added to a name, is ordinarily not a part of the name, although in appropriate circumstances it may be required to be so regarded. It is not necessary to add it to a person's name in a writ or other legal paper, and to omit or add such appellation or cognomen is harmless error, both in civil and criminal proceedings."

By assignment four it is said it was error to limit defense counsel's examination of jurors on voir dire regarding their personal feelings on capital punishment. We will consider this assignment in conjunction with assignment No. Seven.

 For his fifth assignment Hamilton, says his counsel was denied sufficient time to examine and investigate a report of a police officer, that this action of the trial judge hindered cross-examination of the officer and entitles him to a reversal.

The main contention is that counsel should have been permitted to examine the officer's notes of the investigation more thoroughly to determine if they contained any exculpatory evidence. On the other hand the State says because the record does not disclose the length of time allowed defense counsel to examine the report, nor that the trial judge directed him to return the papers to the officer, it is impossible for this Court to determine what happened or to understand the defense complaint.

Neither the defense nor the State have offered any authority to sustain their contentions. See Roberts v. State, 4 Tenn.Cr. App. 537, 474 S.W.2d 165; Rockett v. State, 475 S.W.2d 561, Tenn.Cr.App.1971. Defense counsel was cross-examining an officer from the Chattanooga Police Department who was using notes to refresh his recollection. Counsel had previously examined the officer's memoranda. Near the close of his cross-examination he asked to again see the report. The trial judge admonished him to, "move along" commenting, "we can't be reading and taking time on this". No objection was made to the court's action. The task of a trial judge is not an easy one. Among other things, it is his job to keep the proceedings moving along in an orderly fashion while at the same time giving counsel for both sides adequate opportunity to engage in all necessary examination of witnesses. The complaint goes to a procedural matter which is one within the discretion of the trial court in his handling of the trial proceedings. He had permitted defense counsel to inspect the memoranda of the police officer, as he properly should have done. See Leach v. State, 220 Tenn. 526, 420 S.W.2d 641. This Court dealt extensively with this subject in Fox v. State, 1 Tenn.Cr.App. 308, 441 S.W.2d 491, where, among other authorities, we cited from 82 A.L.R.2d 489, as follows:

"The extent to which witnesses may refer to or read from memory refreshing memoranda, and the extent to which such memoranda may be inspected by counsel or jury is usually, if not always, a matter within the discretion of the trial judge, whose ruling will not be disturbed in the absence of an abuse of such discretion."

We are unable to find an abuse of discretion from this record and overrule the assignment.

 Defendant says the trial court erred in refusing to grant him a copy of the autopsy report on his deceased son.

This was a tragic case in which the aged defendant, Hamilton, was charged with hiring his co-defendant to kill the deceased, Lee Ervin Wright, who had previously been convicted for the homicide of Hamilton's son. In the course of the trial defendant called as a witness the Assistant District Attorney General who had successfully prosecuted Wright for the murder of Harold Hamilton. In a post trial motion a request was made to require the State to provide defendant with a copy of the autop-

sy report on defendant's deceased son. The only ostensible use for this report would have been an endeavor to impeach the testimony of defendant's own witness. The assignment is without merit and is overruled.

▆▆▆ Defendant, Linticum makes a number of assignments of error, some in common with Hamilton. These will be considered jointly. Separately, he says it was error to require him to go to trial with an incompetent co-defendant, and to do so violated his Sixth Amendment right to confrontation.

The State has failed to brief this assignment. In reviewing the record we conclude there are several reasons why the assignment must be overruled.

In the first instance there is no evidence of incompetency on the part of Hamilton. In a jury out hearing his personal physician, who had treated him for some thirty-five years, testified Hamilton was seventy-five years old, and because of his advanced age, had reached a degree of senility which would hinder his ability to withstand rigid cross-examination. This did not render him incompetent. Defendant claims a Bruton violation of his Sixth Amendment right to confrontation. (*Bruton v. U. S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476). We know of no authority which holds that the Bruton rationale applies except in cases of custodial type confessions, nor have we been cited to any such by the defendant. Defendant's objection was to a statement made by Roger Dale Wright, grandson of Hamilton. The testimony was in regard to a statement made to him by Hamilton in Linticum's presence to the effect that Linticum had killed Lee Wright and he, Hamilton, had paid him fifty dollars ($50.00) to do it. The witness had just previously testified that Linticum had admitted the killing in his presence. We find no Bruton violation and overrule the assignment.

▆▆▆ By his third assignment defendant says the evidence was insufficient to support the verdict of the jury which was contrary to the weight and legal sufficiency of the evidence. The sixth assignment objects to denial of a directed verdict.

Defendant argues there were no eye witnesses to the alleged homicide and the jury's verdict was based on circumstantial evidence which was insufficient because of conflicts in the testimony. He says both physical and expert evidence introduced by the prosecution was inconclusive. That there was no evidence to indicate premeditation and the only evidence tending to show a murder for hire was testimony relative to an uncorroborated admission by the co-defendant, insufficient in itself to prove a requisite element of murder in the first degree under the provisions of T.C.A. Sec. 39–2402.

In addition to defendant's own admission to the homicide, and the means by which it was accomplished, there was a great mass of evidence pointing directly to both defendants. The victim's mother testified that he left her home with Linticum about 01:00 P.M. on the day of the homicide. Time of death was fixed at between 01:00 and 02:00 P.M. There was testimony that defendant borrowed a shotgun from a relative which had not been returned prior to the homicide. On the day of the occurrence defendant obtained shotgun shells from Hamilton's grandson. The cause of death was established to be multiple shotgun wounds. Defendant made incriminating remarks prior to the killing and an admission, after the fact, that he was responsible for it. Another witness saw his automobile covered with blood after the homicide and testified that defendant asked her to keep a gun which he had in his possession. The elements of premeditation, deliberation, and malice could properly be inferred from the circumstances surrounding the homicide and the fact that it was accomplished with a deadly weapon. *Nance v. State*, 210 Tenn. 328, 358 S.W.2d 327; *Davis v. State*, 1 Tenn.Cr.App. 479, 445 S.W.2d 933; *Edwards v. State*, 221 Tenn. 60, 424 S.W.2d 783. Such conflicts as may have existed in the testimony of the witnesses were resolved by the verdict of the jury as well as the credibility of those witnesses. *Wilson v. State*, 2 Tenn.Cr.App. 468, 455 S.W.2d 172. Defendant has failed to carry the burden

imposed upon him on appellate review to show that the evidence preponderates in favor of his innocence and against the verdict of the jury. *Jamison v. State*, 220 Tenn. 280, 416 S.W.2d 768. *Webster v. State*, 1 Tenn.Cr.App. 1, 425 S.W.2d 799. Under the evidence in this case he was not entitled to a directed verdict. The assignments are overruled.

■ Defendant says he suffered a deprivation of his constitutional right to a fair trial because the State failed to provide him with results of tests performed by the Federal Bureau of Investigation which were exculpatory in nature.

Defendant relies on the United States Supreme Court decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, as well as *Branch v. State*, 4 Tenn.Cr. App. 164, 469 S.W.2d 533, to the effect that nondisclosure or suppression of evidence or information favorable, or useful to the defense, even though there is no showing of bad faith, offends those fundamental constitutional concepts of a fair trial, and violates due process where the evidence is material either to guilt or to punishment. A pre-trial motion was filed on November 20th, 1974 for results of analytical tests which would exculpate defendant. The motion was granted on November 25th, 1974, with the limitation that it was sustained within code limits. The FBI analysis reports were not furnished to defendant pretrial. At trial an Federal Bureau of Investigation expert testified that blood found on the trim mold of defendant's automobile was human blood. Analysis of the auto carpeting disclosed human blood which demonstrated an "A blood group substance". It was not possible to demonstrate the presence or absence of another part of the blood group system such as a combination of A and O, or A and B types, therefor the analysis was inconclusive as to blood type. The upholstery and console of the automobile contained human blood stains which could not be identified as to blood types. Defendant's trousers had human blood stains which were also "A blood group substance". The tests were inconclusive as

to the existence of other blood groups. Co-defendant Hamilton's sweater contained human blood stains positively identified as Group A. His socks had human blood stains identified as Group A but inconclusive as to the existence of other blood groups. Blood stains on the victim's tee shirt were positively identified as Group A. It is defendant's theory that the test results were inconclusive and therefor exculpatory in nature.

Defense Counsel has zealously pursued his client's interest however after serious thought we have reached the conclusion that his reliance on *Brady v. Maryland*, supra, and *Branch v. State*, supra, is misplaced. The argument seems to confuse the difference between actual suppression of evidence favorable to the accused by the prosecution, and the right to discovery in criminal cases, which is limited in this State by statute. *West v. State*, 3 Tenn.Cr.App. 671, 466 S.W.2d 524; *State v. Dougherty*, 483 S.W.2d 90, Tenn.1972; *Pique v. State*, 499 S.W.2d 4, Tenn.Cr.App. 1973. While there is some suggestion in *Giles v. Maryland*, 386 U.S. 66, p. 75, 87 S.Ct. 793, 17 L.Ed.2d 737, that a, "work product" is discoverable, it seems to be only in a case where it is actually exculpatory of a defendant, or might be effectively utilized in obtaining further evidence. We do not find this to be true in this case. Actually, the evidence was not suppressed, but was introduced by the State at trial. In examining the evidence we find it to be at best, neutral, and taken in its entirety might well have been cast as inculpatory rather than otherwise. Since the evidence was not suppressed at trial, and is not, in our view, exculpatory in nature, the assignment must be overruled.

■ Defendant says the trial court erred in limiting cross-examination of prosecution witnesses.

Examination of the record at the page references made in defendant's brief indicates objections to this line of questioning were only made and sustained where there was a possibility of a hearsay violation. Defendant was allowed considerable lati-

tude in examining witnesses on the points he raises as an issue in his brief. The scope of cross-examination is a discretionary matter with the trial court which will not be interfered with in the absence of some indication of abuse. *Hudgins v. State*, 3 Tenn. Cr.App. 148, 458 S.W.2d 627.

 Defendant complains his motion for a preliminary hearing was denied.

Defendant was arrested on October 19th, 1974. The original presentment was returned on October 24th, 1974. Thirty-two days later on November 20th, 1974, defendant filed a motion for preliminary hearing. Although defendant was arrested on probable cause, and not on a warrant, on application properly made, it may be that he would have been entitled to a preliminary hearing. However, the application was not timely made, nor was there a motion to abate the indictment made within thirty days from the date of his arrest. T.C.A. Sec. 40–1131. The assignment must be overruled.

By his tenth assignment defendant Linticum says the argument of the prosecuting attorney was prejudicial.

We have examined the argument of counsel with particular reference to the point in the argument delineated in defendant's brief. We do not find reversible error. The assignment is overruled.

The remainder of the assignments submitted by each of the defendants relate to the punishment fixed by the jury, or to the capital punishment statute mandating death by electrocution upon conviction for first degree murder. These assignments have been pretermitted by the State Supreme Court's decision in *Clarence L. Collins, Jr. v. State*, 550 S.W.2d 643, Tenn., and *State v. Frank Carl Morgan* (1977), holding the death penalty statute unconstitutional. The Governor of this State has commuted the death sentences to life imprisonment in the penitentiary. The Supreme Court of Tennessee has upheld the validity of this executive action. *Collins v. State*; and *State v. Morgan*, Opinion on Petition to Rehear (May 2, 1977).

The judgment of the trial court is affirmed as modified by executive action commuting the sentences to life imprisonment in the penitentiary.

GALBREATH, and RUSSELL, JJ., concur.

GALBREATH, Judge, concurring.

I concur with a strong recommendation that, if the defendant Hamilton's past record and present circumstances merit clemency, he be seriously considered for probation if an application is made on his behalf to the Executive. Surely, the act motivating the defendant's departure from what may well have been an orderly and productive life, the murder of his own son by the victim in this homicide, suggests mitigating factors to a degree seldom found.