**Frankie SEELBACH and Richard Keith Dugger, Appellants,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

July 6, 1978.

Certiorari Denied as to Seelbach by Supreme Court, Sept. 18, 1978.

Certiorari Denied as to Dugger by Supreme Court Nov. 6, 1978.

268

Douglas J. Carter, Johnson City, for Seelbach.

Max E. Wilson and William L. Guy, Mountain City, for Dugger.

Brooks McLemore, Jr., Atty. Gen., Michael J. Passino, Asst. Atty. Gen., Nashville, David E. Crockett, Asst. Dist. Atty. Gen., Elizabethton, William R. Mooney, Asst. Dist. Atty. Gen., Johnson City, for appellee.

## OPINION

WALKER, Judge.

The appellants, Frankie Seelbach and Richard Dugger, were jointly tried and convicted in two cases of rape and one case of first degree burglary and were sentenced to consecutive sentences of 18 years, 12 years and five to six years, respectively. A third man, Steve Dugger, was also indicted in the three cases but was not available for trial.

■ On this appeal we are first confronted with a bill of exceptions filed 139 days after the motion for a new trial was overruled on July 5, 1977. The trial judge allowed 90 days for its filing and on July 18 granted the court reporter an additional 60 days. The bill of exceptions was filed on November 21, 49 days later than the maximum period allowed by law. T.C.A. 27–111. Although this bill of exceptions consists of more than 1000 pages, the trial judge was without authority to grant the 60-day extension. On our own motion, however, we may consider it as a late bill of exceptions and we do so. *Dailey v. State,* 225 Tenn. 472, 470 S.W.2d 608 (1971); *State v. Wilson,* 530 S.W.2d 766 (Tenn.1975).

■ We find that the minutes show that the verdict in each case was returned by 13 jurors, an error found reversible in *Grooms v. State,* 221 Tenn. 243, 426 S.W.2d 176 (1968). An examination of the bill of exceptions, however, shows that the trial judge dismissed the alternate juror. In this conflict the bill of exceptions controls. *Church v. State,* 206 Tenn. 336, 333 S.W.2d 799 (1960). We call attention to the importance of having minute entries accurately reflect the proceedings of the court.

After carefully examining all of the assignments of error by each appellant, we find no reversible error.

These convictions stem from the appellants' intrusion, along with Steve Dugger, into the home of Helen Stout. Mrs. Stout's daughters (Crystal, age 11, and Sue, age 19) and Sue's two-year-old son, Shad, were at home with Mrs. Stout, age 46, at about 11:00 p. m., September 27, 1976, when a man stopped and asked directions to a neighbor's house. The man, later identified as Seelbach, returned in a short time and knocked again. With a pistol, Mrs. Stout approached the door to tell Seelbach to leave. When she slightly opened the door, he flung it open, struck her in the face with his fist and rushed in, followed by two men with T shirts over their faces to conceal their identities. Sue recognized Steve Dugger's voice and later recognized Richard Dugger when his face was uncovered. Seelbach was not masked.

The three men repeatedly had unlawful sexual intercourse with Helen and Sue, forcibly and against their wills. They also forced the women to perform fellatio and to submit to anal sex. Crystal hid behind a

door and the television set, but she witnessed much of the perpetration of the crimes. The men looked for the "eleven year old cherry" but did not find her. They threatened to take the two-year-old child with them. Armed with a knife and Mrs. Stout's pistol, they demanded money. She gave them her pocketbook and the money she had. Dugger's fingerprints were found on a wine bottle taken from the refrigerator. After the men had been there forty-five minutes to an hour, Peggy Tester, a friend of Sue, drove up and the men fled through a back window. Sue promptly reported these events to an officer, and she and her mother were taken to a hospital. Helen had three broken ribs and severe bruises. Sue was not seriously injured.

Dugger did not testify. Seelbach testified that he had car trouble and that he, Richard Dugger and Steve Dugger entered the house at the invitation of the Stouts, that Richard went out to the car to get some beer and drove off. When Mrs. Stout told Seelbach that he and Steve must go, Seelbach became angry and struck her. He then picked her up and apologized. About this time a car drove up and the women showed them the way out a back window. After crawling through the window, Seelbach said that he went into the mountains. He saw no pistol or knife. No threats were made, according to him, and no larceny or rape took place. By his testimony, he committed an assault and battery on Helen Stout, but that was the only offense of which either appellant was guilty.

The jury resolved the conflicts in the evidence and accepted the theory of the state. Although the medical proof did not establish ejaculation, it did not preclude the fact of intercourse. The jury's verdict approved by the trial judge accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state's theory. *Webster v. State,* 1 Tenn.Cr.App. 1, 425 S.W.2d 799 (1967); *State v. Grace,* 493 S.W.2d 474 (Tenn.1973).

■ The appellants urge that the trial court erred by failing to grant their motion for a change of venue because of newspaper and radio publicity. The motion was overruled March 3, 1977, and the trial began March 23, almost six months after the pretrial publicity complained of. The proof does not show extensive publicity or any undue excitement or hostility against the appellants. The prospective jurors were thoroughly examined and the appellants accepted the jury without exercising all of their peremptory challenges. The examination of the jurors does not support a claim of extensive juror hostility. The court did not abuse its discretion in denying a change of venue. *Broz v. State,* 4 Tenn.Cr.App. 457, 472 S.W.2d 907 (1971).

■ Dugger's pretrial motion for a severance was also denied, although no order to that effect was entered. He cites no authority. His codefendant exonerated him by his testimony, and this record shows no abuse of discretion by the trial judge in refusing the severance. *See Davis v. State,* 1 Tenn.Cr.App. 479, 445 S.W.2d 933 (1969).

■ Dugger also insists that the court should have granted his motion for a psychiatric examination of Sue Stout. He cites purported inconsistencies between her testimony and that of her mother and other witnesses, which he claims show her mental instability. He insists that her promiscuous pattern of conduct further evidences this instability. He relies on *Forbes v. State,* 559 S.W.2d 318 (Tenn.1977), decided about eight months after this case was heard. That case holds that the trial court has power to compel a psychiatric or psychological examination of the victim, but that this power should be invoked only for the most compelling reasons, all of which must be documented in the record, and that this discretion should be exercised sparingly. This record reveals no compelling reasons for ordering one of the victims to submit to a psychological examination. The ruling of the court was correct.

■ The appellants contend that the court's failure to conduct a direct examination of its own witness was reversible error, relying on *Montesi v. State,* 220 Tenn. 354, 417 S.W.2d 554 (1967).

When it appeared that neither side intended to call Dr. John Whitlock, the physician who had examined the two women, the trial judge called him as the court's witness. He did not conduct a direct examination but immediately turned the witness over to both sides for cross-examination. Dr. Whitlock testified as to the injuries of the women when they were brought to the hospital. He found no sperm on them although a proper test was not run on the slides because a technician had disposed of the slides before the tests were completed. His testimony was either inconclusive or favorable to the appellants on that question.

In *Montesi v. State, supra* (reversing on other grounds), the court held that although the trial court has the discretion to call witnesses, this discretion should be carefully exercised. On the retrial the Supreme Court held that if the trial judge called the witness as a court's witness, he should himself conduct a direct examination or see that she was given the opportunity for a full direct examination before turning her over for cross-examination.

While the court did not comply with the directives of *Montesi*, the testimony of Dr. Whitlock was fully developed and there was no prejudice to the appellants by the failure to accord him a direct examination. The error is harmless.

■ The appellants argue that the court erred by holding a Friday night session until 9:13 p. m. The trial began on Wednesday, and all parties understood that the case should be completed that week, if possible, because the judge had court elsewhere the following week.

At 6:25 p. m. on Friday the court indicated his intention to continue until the defendants rested or until a reasonable hour, whichever came first. The court adjourned promptly on Dugger's counsel pointing to the lateness of the hour. This night session was reasonable under the circumstances and does not violate the principles laid down in *Hembree v. State,* 546 S.W.2d 235 (Tenn.Cr.App.1976), upon which the appellants rely.

■ Related to this contention is Dugger's assignment that the court pressured defense counsel to have the defendants testify Friday night or not at all.

At 4:30 p. m. on Friday the court began to inquire about how many additional witnesses would be called and whether or not the defendants would take the stand. During this colloquy, there is no indication that the court coerced counsel to make any decision concerning whether his client would testify, nor is there any indication that counsel objected. Although counsel indicated that Dugger would not testify, the court allowed him to wait until Saturday morning to rest his case. Dugger's reliance on *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), is misplaced. The court here did not attempt to interfere with the order of the appellants' proof, with their right to remain silent or with their strategic decisions, made with the "guiding hand of counsel." This assignment lacks merit.

■ Also without merit is the contention that the appellants were prejudiced because, they contend, the prospective jurors saw them in handcuffs. Following a lunch recess during the selection of the jury, Seelbach's counsel said that after adjournment for lunch the officers had handcuffed both appellants while prospective jurors were in the courtroom. The prosecutor replied that the state was not aware of that action until defense counsel complained, but that he had instructed the officers not to handcuff the appellants in the presence of the jury or in the courtroom. The trial judge also ordered the officers not to handcuff any prisoner while the jury was present and the record shows no further incident of this nature. It is not clear that any prospective jurors saw the handcuffs and, in any event, it was not repeated. The appellants were not prejudiced.

■ There has been no showing that the trial judge "pampered" the prosecuting witnesses and permitted them privileges in the courtroom and in the facilities of the courthouse, contrary to the appellants' conten-

tions. The record shows that he presided fairly and impartially in a hotly contested trial. Further, there is no showing at all that he was physically unable to conduct the trial.

▮ Seelbach contends that the court improperly restricted his counsel and counsel for Dugger in their efforts to impeach state's witnesses. He says it was error to refuse to let Dugger's counsel read an FBI report to impeach Sue Stout. Counsel laid no proper foundation, and no prior inconsistencies appear. There was likewise no error in the court's refusal to allow counsel to probe into Sue Stout's relationship with the Department of Human Services. The trial judge did not abuse his discretion in limiting cross-examination on this question. Although there was no issue of consent in these cases, the trial judge permitted the appellants to explore thoroughly the sexual activity of the victims. Sue testified that she had had numerous sexual relationships with men and that her child was born out of wedlock. Helen was divorced and her association with a married man was scrutinized. The trial judge was liberal in allowing inquiry into these women's backgrounds as that information related to their credibility. The jury had all of this for its consideration.

▮ Both appellants say the court erred in denying Seelbach, as an indigent, a copy of the trial transcript at state expense for use in preparing his motion for a new trial. Dugger was not an indigent, although he says he was unable to purchase the record and would have used the record if it had been furnished to Seelbach. He cites no authority on his position.

This court has found no Tennessee authority giving sanction to such requests. We approved a denial in *Banks v. State,* 556 S.W.2d 88 (Tenn.Cr.App.1977), absent a showing of prejudice or citation of authority. From a thorough reading of the entire record in this cause, it is obvious that the appellants' counsel raised every possible error of which they could legitimately complain. The trial judge was correct in denying this motion.

▮ Dugger urges that the court erred by fixing consecutive sentences. He insists that because no witness testified that he struck, or was seen striking, either of the victims, and because Seelbach testified that Dugger had left the premises before Seelbach admits having hit Helen Stout, no aggravation of circumstances has been demonstrated which would warrant the imposition of consecutive sentences. However, by returning guilty verdicts as to both rape charges and the burglary charge, the jury rejected the defense claims that Dugger had left the scene and has accredited the state's theory, which included testimony that the appellants threatened to kill the Stouts if the women did not give them money, that they cut a drapery cord and tied Sue Stout's hands and that they struck and abused both women in a violent manner, requiring a week's hospitalization for Helen Stout. Moreover, the evidence showed that at least one of the appellants was armed with a knife, that they seized a pistol which they used to rob and rape and terrorize the victims over a period of about an hour, and that they threatened to injure the two children. The violence and threats which accompanied this entire episode in which the jury found Dugger a full participant are sufficient to constitute aggravating circumstances which justify Dugger's consecutive sentences. The trial court found both appellants dangerous offenders, and he pointed out that one of the victims was bruised and battered. He considered the guidelines of *Gray v. State,* 538 S.W.2d 391 (Tenn.1976). In fixing consecutive sentences he did not abuse his discretion.

All assignments of error are overruled and the judgments are affirmed.

BYERS, J., and W. WAYNE OLIVER, Special Judge, concur.